**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3750
_____

ALAN W. SCHMIDT, on behalf of himself and in a
representative capacity on behalf of all others similarly
situated and derivatively on behalf of Genaeral Corporation,,
Appellant

v.

JOHN A. SKOLAS; LEANNE KELLY; JOHN L.
ARMSTRONG, JR.; ZOLA B. HOROVITZ, Ph. D.;
OSAGIE O. IMASOGIE; MITCHELL D. KAYE; ROBERT
F. SHAPIRO; PAUL K. WOTTON; ROBERT DELUCCIA;
DAVID LUCI; STEVE ROUHANDEH; JEFFREY DAVIS;
MARK ALVINO; GENAERA LIQUIDATING TRUST;
BIOTECHNOLOGY VALUE FUND, INC.; LIGAND
PHARMACEUTICALS, INC.; XMARK CAPITAL
PARTNERS, LLC; ARGYCE LLC; OHR
PHARMACEUTICALS; JOHN L. HIGGINS; GENAERA
CORPORATION; SCO FINANCIAL GROUP; DIPEXIUM
PHARMACEUTICALS, LLC; MACROCHEM
CORPORATION; ACCESS PHARMACEUTICALS, INC.;
MARK N. LAMPERT
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:12-cv-03265)
District Judge:  Honorable Berle M. Schiller
_____

Argued: September 9, 2014

Before:  RENDELL, GREENAWAY, JR. and SLOVITER
*Circuit Judges*

(Opinion Filed:  October 17, 2014)

Howard J. Bashman, Esq. (ARGUED)
Suite G-22
2300 Computer Avenue
Willow Grove, PA  19090

Lee Squitieri, Esq.
Squitieri & Fearon, LLP
32 East 57th Street
12th Floor
New York, NY  10022

*Attorneys for Appellant*

Katherine U. Davis, Esq.
Carolyn E. Isaac, Esq.
Michael L. Kichline, Esq. (ARGUED)
Dechert LLP
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA  19104

Donald A. Corbett, Esq.
Richard C. Wolter, Esq.
Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, NY  10020

Christopher M. Guth, Esq.
Blank Rome LLP
130 North 18th Street
One Logan Square
Philadelphia, PA  19103

Amy C. Lachowicz, Esq.
Joseph E. Vaughan, Esq.
O'Hagan LLC
100 North 18th Street
Two Logan Square, Suite 700
Philadelphia, PA  19103

Denean K. Sturino, Esq.
O'Hagan LLC
One East Wacker Drive
Suite 3400
Chicago, IL  60601

Michael D. Blanchard, Esq. (ARGUED)
Christopher M. Wasil, Esq.
Bingham McCutchen
One State Street
Hartford, CT  06103

Jordan D. Hershman, Esq.
Bingham McCutchen
One Federal Street
Boston, MA  02110

John S. Summers, Esq.
Robert A. Wiygul, Esq.
Hangley, Aronchick, Segal, Pudlin & Schiller
One Logan Square
18th & Cherry Streets, 27th Floor
Philadelphia, PA  19103

Joseph P. Dever, Jr., Esq.
Tamar S. Wise, Esq.
Cozen O'Connor
45 Broadway
16th Floor
New York, NY  10006

Joshua N. Ruby, Esq.
Jeffrey G. Weil, Esq. (ARGUED)
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103

Paul G. Nofer, Esq.
Klehr Harrison Harvey Branzburg LLP
1835 Market Street
Suite 1400
Philadelphia, PA  19103

John T. Ryan, Esq. (ARGUED)
Latham & Watkins LLP
12636 High Bluff Drive
Suite 400
San Diego, CA  92130

Stephanie Grace, Esq.
Colleen C. Smith, Esq.
Latham & Watkins LLP
12670 High Bluff Drive
San Diego, CA  92130

*Attorneys for Appellees*

_____

OPINION
_____


SLOVITER, *Circuit Judge*.


Alan Schmidt, a former shareholder in the now-defunct Genaera Corporation ("Genaera"), appeals from the District Court order dismissing his complaint on statute of limitations grounds. Genaera was a biotechnology company that dissolved in June 2009 and liquidated its assets. On June 8, 2012, Schmidt brought suit in the United States District Court for the Eastern District of Pennsylvania on behalf of himself and all other former Genaera shareholders against the liquidating trustee (Argyce, LLC ("Argyce")); the Genaera Liquidating Trust; John Skolas, who served as Argyce's CEO

and Genaera's former CFO; former major Genaera shareholders Xmark Capital Partners, LLC ("Xmark") and Biotechnology Value Fund, Inc. ("BVF"); former directors and officers of Genaera ("D&O defendants"); and the purchasers of certain Genaera assets. The essence of Schmidt's complaint is that the liquidating trustee and the D&O defendants breached their fiduciary duties by disposing of promising drug technologies in tainted insider deals for far less than their true value. He also alleges that Xmark and BVF, Genaera's two largest shareholders, aided and abetted this behavior so that companies they controlled could acquire Genaera's assets at fire sale prices. All defendants except for SCO Financial Group ("SCO") moved to dismiss Schmidt's complaint as untimely under the applicable two-year statute of limitations.

Schmidt did not dispute the applicability of the two-year statute of limitations and acknowledged that he filed suit more than two years after the relevant assets were sold. Instead, he argued that the statute of limitations should be tolled under Pennsylvania's discovery rule because he could not have been aware of the insider nature of the sales or that the assets were sold for far below their actual value until he learned the details of the sales, and certain subsequent market events suggested to him that the assets were quite valuable. The District Court rejected this argument and held that Schmidt had all the information he needed to file the suit more than two years before he filed. Schmidt timely appeals.[1]

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332(a). This court has jurisdiction under 28 U.S.C. § 1291.

6

I.

Genaera was a biotechnology company that developed pharmaceutical drugs and held licenses to patents and other intellectual property. In April 2009, Genaera's board of directors concluded that the company's prospects were dim, and announced their intent to dissolve the company. On April 18, 2009, the board unanimously approved, and recommended that the shareholders approve, a plan of dissolution to dispose of the company's assets through a liquidating trust. On May 14, 2009, the board submitted a proxy statement to shareholders regarding the dissolution plan and filed that proxy statement with the SEC. The proxy statement warned shareholders that they should expect to receive only 1/5 of a penny to 1.7 cents per share once the assets were liquidated. The complaint alleges that the proxy statement contained misrepresentations about whether any Genaera officers or directors would profit from the dissolution, and that it was flawed in various ways. The shareholders approved the dissolution plan on June 4, 2009, and Genaera filed articles of dissolution with the Delaware Secretary of State on June 12, 2009. Pursuant to the dissolution plan, the company's assets were transferred to the Genaera Liquidating Trust, with defendant Argyce as liquidating trustee.

Three of Genaera's assets that were ultimately sold, with the proceeds being distributed to shareholders, are relevant to this appeal. The allegations related to each of those assets are discussed in turn.

7

## A. The Aminosterol Assets

The Aminosterol Assets consisted of compounds used for treating macular degeneration. The trustee sold the Aminosterol Assets in May 2009 for $200,000 to BBM Holdings, Inc. ("BBM"), the predecessor to defendant Ohr Pharmaceuticals ("Ohr"). The complaint states that in August 2009, "the Trustee publicly reported that the Aminosterol Assets inventory had been sold for a nominal sum." App. at 106a. It is not clear from the complaint whether the trustee's announcement named the purchaser or the sale price. Ohr filed a Form 8-K in August 2009 announcing the purchase, with the purchase agreement (including the sale price) attached.

The complaint avers that the purchaser, BBM, is a shell company that arranged financing for the purchase before Genaera's shareholders even formally voted to dissolve the company. The complaint further alleges that Argyce and Skolas breached their fiduciary duties by agreeing prematurely to this offer instead of marketing the assets properly. The complaint also asserts that the Aminosterol Assets were worth far more than the $200,000 sale price, citing a May 2012 presentation in which defendant Ohr, the successor to BBM, estimated the potential market for drugs based on the compounds at 1.75 million U.S. patients.

## B. Pexiganan

Pexiganan was a topical cream for the treatment of diabetic foot infections. MacroChem Corp. ("MacroChem") licensed the right to develop Pexiganan from Genaera in 2007. Under the terms of the license, Genaera would receive

8

payments totaling $7 million upon the achievement of certain development milestones, up to $35 million for reaching certain sales milestones, and 10% of sales as royalties. The complaint alleges that at some point in 2008, "MacroChem abruptly reversed course on Pexiganan," App. at 86a, spending only $45,110 on development of Pexiganan that year. Defendant Access Pharmaceuticals acquired MacroChem in 2009, and ceased development of Pexiganan. The complaint alleges that Genaera had a right under its agreement with MacroChem to demand the return of Pexiganan if MacroChem ceased development, but the D&O defendants, in breach of their fiduciary duties, failed to exercise that right. Pexiganan was ultimately returned to Genaera Liquidating Trust in December 2009, after Genaera's dissolution. The complaint implies that demanding the return of Pexiganan earlier and continuing its development could have staved off the need to dissolve Genaera.

The complaint further alleges that the liquidating trustee ultimately sold Pexiganan in an improper, self-dealing transaction. Specifically, certain insiders from MacroChem founded a new company, Dipexium, which bid on Pexiganan in liquidation. The liquidating trustee set a short deadline for bidding, announcing the availability of Pexiganan on January 11, 2010, and setting a deadline of February 12, 2010, for bids. The complaint alleges that this short deadline favored the MacroChem insiders associated with Dipexium because they were already familiar with Pexiganan. Meanwhile, outside bidders had to await receipt of a "confidential information package," review it, and perform pharmacological, regulatory, and valuation analyses, all in just one month before submitting their bids. Although Pexiganan's sales potential for Genaera was allegedly

9

estimated to exceed $100 million, Dipexium ultimately acquired the rights to Pexiganan for a "minor purchase price" and free of any royalty and milestone payment obligations. The complaint does not contain the exact date of the sale. And, Schmidt contends that the earliest he could have known of Pexiganan's sale price was 2011, when Argyce publicly issued unaudited financial statements for the year ended December 31, 2010, which, according to the complaint, evidences that Pexiganan was sold for approximately $252,000. The complaint alleges that about ninety days after buying the rights to Pexiganan, Dipexium raised $1.07 million in funding to develop the asset, and raised another $1.4 million ninety days after that.

## C. Interlukin 9 ("IL9")

IL9 was an antibody program for asthma. Genaera had licensed the technology to MedImmune, LLC ("MedImmune"). Under its agreement with MedImmune, Genaera could have received up to $54 million in payments and royalties if IL9 reached certain development milestones. The complaint alleges that defendant Skolas had previously told Schmidt that IL9 had the potential for "$3 to $4 billion peak year sales." App. at 99a.

On May 18, 2010, the liquidating trustee sold IL9 for "a mere" $2.75 million to defendant Ligand Pharmaceuticals ("Ligand"). Two days later, Ligand conveyed half of that interest to defendant BVF—one of Genaera's largest shareholders. Ligand filed the IL9 purchase agreement with the SEC on May 24, 2010, as an attachment to a Form 8-K. The purchase agreement disclosed the price and the subsequent sale to BVF.

The complaint alleges that the sale to Ligand for a "*de minimis*" price was a fraudulent transaction intended to allow BVF to acquire the asset at a price below its value. The complaint points to the fact that prior to the liquidation, BVF was both Genaera's second-largest shareholder and also owned 15% of Ligand's stock. However, in the period before Genaera's dissolution, BVF sold Ligand stock until it held less than a 10% share, and thus would no longer be considered a Ligand insider. BVF's reduction in its ownership of Ligand, the complaint alleges, was a smokescreen to disguise the fact that the sale of IL9 to Ligand, which subsequently conveyed it to BVF, was actually a preferential sale to a major Genaera shareholder. Finally, the complaint alleges that the net effect of this transfer was to take a valuable asset that would have benefited all of Genaera's shareholders and transfer it to a single major shareholder.

## II.

Schmidt brought suit against the liquidating trustee, the liquidating trust, John Skolas, former officers and directors of Genaera, BVF, Ligand, Xmark, Ohr, Dipexium, MacroChem, Access, and SCO. The complaint contained twelve counts. Those relevant to this appeal are:

1. Count 1: breach of fiduciary duty by the D&O defendants;
2. Count 2: breach of the duties of a trustee by the liquidating trustee;
3. Count 3: waste of corporate assets by the D&O defendants;

11

4. Count 9: breach of fiduciary duties owed by controlling shareholders to minority shareholders by defendants Xmark, Kaye and BVF;
5. Count 10: punitive damages;
6. Count 11: rescission of the sale of the Aminosterol Assets to Ohr; and
7. Count 12: rescission of the sale of Pexiganan to Dipexium.

Several of those counts also charge other defendants with aiding and abetting. All of the defendants except SCO moved to dismiss on statute of limitations grounds. Schmidt agreed to dismiss counts 4-8 without prejudice before the District Court rendered its decision.

The District Court dismissed all counts of the complaint with prejudice. In relevant part, it held that Schmidt filed the breach of fiduciary duty and corporate waste claims after the applicable two-year statute of limitations had expired, and that the discovery rule did not save the claims. Specifically, the District Court held that Schmidt had "not met his burden of demonstrating that the discovery rule should apply here." App. at 28a. In doing so, the District Court noted that "by May 2010, all of the relevant transactions had occurred and been publicly announced, through a combination of updates from [Genaera Liquidating Trust], public SEC filings, and press releases from the acquiring companies." *Id.* at 27a. It dismissed the rescission and punitive damages claims because they cannot stand without their underlying claims, and dismissed counts 4-8 with prejudice, even though Schmidt had previously agreed to dismiss those claims without prejudice.

The District Court's decision did not cite, and the parties did not call to its attention, this court's opinion in *In re Mushroom Transportation Co.*, 382 F.3d 325, 343 (3d Cir. 2004), which bears on this appeal because it provides standards for applying the discovery rule in cases involving the statute of limitations applicable to fiduciary defendants.

Schmidt timely appeals. While he concedes that a two-year statute of limitations applies and acknowledges that the relevant transactions occurred more than two years before he filed his suit, he argues that the District Court erred in considering materials outside of the complaint in evaluating the defendants' motions to dismiss, and that material factual disputes exist as to whether Pennsylvania's discovery rule tolled the limitations period.

## III.

We review a District Court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) *de novo*. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008). Under Federal Rule of Civil Procedure 8, a complaint need not anticipate or overcome affirmative defenses; thus, a complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense. *See In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004) (citing *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) ("[L]itigants need not try to plead around defenses")).

Schmidt argues that the District Court erred in two ways: first, by considering documents not appropriate for consideration at the motion to dismiss stage, and second, by

holding that the discovery rule did not apply to toll Pennsylvania's statute of limitations. We address each of Schmidt's arguments in turn.

A.

The District Court erred in considering certain documents attached to defendants' Rule 12(b)(6) motions. Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss. *See Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002). In this circuit, however, we permit a limitations defense to be raised by a motion under Rule 12(b)(6) "only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Id.* (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)). However, "'[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).'" *Id.* (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'" *In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996), *superseded on other grounds by* PSLRA, 15 U.S.C. § 78u-4(b)(2)). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here the plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *Id.* (quoting *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993)). "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id.*

The defendants in this case attached several different kinds of documents to their motions to dismiss. Some, like the affidavits attached by the Dipexium defendants, clearly may not be considered at this stage. *See Cent. Contracting Co. v. Md. Cas. Co.*, 367 F.2d 341, 343 (3d Cir. 1966) (converting a motion to dismiss to a motion for summary judgment where the parties submitted affidavits in support of their positions). Others, like the SEC filings attached by a number of the defendants, are matters of public record of which the court can take judicial notice. *See City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998); *see also Pension Benefit Guar. Corp.*, 998 F.2d at 1197 (explaining that "public record[s]" in this context are materials like decision letters of government agencies and published reports of administrative bodies).

The District Court relied not just on the complaint and SEC filings, but also on "updates from [Genaera Liquidating Trust] . . . and press releases from the acquiring companies"

15

that the defendants attached to their motions to dismiss. App. at 27a. The defendants argue that these materials, available before June 8, 2010, contain all the information Schmidt needed to ascertain his injury. While that may be true, these materials may not be considered at the motion to dismiss stage. They are not integral to the complaint—the complaint was not "based" on press releases or updates from Genaera Liquidation Trust, but rather on sales transactions. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426. Nor are those documents the records of a government agency. *See Pension Benefit Guar. Corp.*, 998 F.2d at 1197.

Moreover, taking notice of these postings on Genaera Liquidating Trust's website and the press releases is inconsistent with the rationale of the integral documents exception. As this court explained in *In re Burlington Coat Factory Securities Litigation*, the justification for the integral documents exception is that it is not unfair to hold a plaintiff accountable for the contents of documents it must have used in framing its complaint, nor should a plaintiff be able to evade accountability for such documents simply by not attaching them to his complaint. *See* 114 F.3d at 1426. But Schmidt claims that he never saw the updates on the Genaera Liquidating Trust website and disputes that they were publicly posted on the dates that the defendants claim that they were posted. He asserts that the document on which he based his complaint is Genaera Liquidating Trust's financial information for fiscal year 2010, which was disclosed sometime in 2011 in a report by the liquidating trustee. Therefore, the District Court's reliance on press releases and updates from Genaera Liquidating Trust was improper.

16

B.

We now turn to whether, based only on the documents properly considered at the motion to dismiss stage (the complaint, the SEC filings, and certain "integral documents" such as the fiscal report on which Schmidt relied), Schmidt's claims should have been dismissed on statute of limitations grounds.

The parties do not dispute that Pennsylvania's two-year statute of limitations for claims of breach of fiduciary duty and corporate waste applies. "The general rule is that the statute of limitations begins to run as soon as a right to institute and maintain suit arises." *Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 231 (3d Cir. 2003) (citing *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000)).

Looking only to the dates alleged in the complaint, it is clear that Schmidt's right to assert claims related to the Aminosterol Assets and IL9 arose before June 8, 2010. The sale of the Aminosterol Assets occurred at the latest by June 8, 2009, when the trustee accepted a $50,000 down payment for the assets. The sale of IL9 to Ligand occurred on May 18, 2010. All of the conduct by BVF that was allegedly intended to cover up the self-dealing nature of the IL9 sale occurred in 2008 and 2009. These dates are all contained in Schmidt's complaint, and are before June 8, 2010. Unless the discovery rule tolls the statute of limitations, an issue which is discussed *infra*, these claims are time-barred.

In contrast, the claims arising from the Pexiganan sale are not facially time-barred, even without reliance on the discovery rule. The complaint states that the liquidating trustee solicited bids for the sale of the Pexiganan Assets on January 11, 2010, and set a February 12, 2010 deadline for bids. However, there is no precise sale date, and the complaint vaguely references that the sale took place in 2010. David Luci of Dipexium submitted an affidavit averring that Dipexium purchased Pexiganan on April 8, 2010. But an affidavit from a defendant may not be considered in deciding a motion to dismiss. *See Cent. Contracting Co.*, 367 F.2d at 343. There is no document in the record that might properly be considered on a motion to dismiss, such as an asset purchase agreement, that establishes that the sale of Pexiganan occurred before June 8, 2010. Therefore, Schmidt's claims arising out of this sale are not time-barred even without considering the discovery rule.

C.

"The discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct." *Crouse*, 745 A.2d at 611. "In order to determine when the statute should begin to run, the finder of fact focuses on whether the plaintiff was reasonably diligent in discovering his injury." *Id*. "Pursuant to application of the discovery rule, the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue 'best determined by the collective judgment, wisdom and experience of jurors.'" *Id*. (quoting *White v. Owens-Corning Fiberglas, Corp.*, 668

18

A.2d 136, 144 (Pa. Super. Ct. 1995)). "[O]nly where the facts are so clear that reasonable minds *cannot differ* may the commencement of the limitations period be determined as a matter of law." *Id.*

Generally, the plaintiff bears the burden of showing that the discovery rule tolls the statute of limitations. *See Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997). However, while a court may entertain a motion to dismiss on statute of limitations grounds, *Robinson*, 313 F.3d at 135, it may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense. *See In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d at 277 (citing *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) ("[L]itigants need not try to plead around defenses")); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994). This distinction comes to the fore here, where the applicability of the discovery rule is not evident on the face of the complaint but the plaintiff also does not plead facts that unequivocally show that the discovery rule does not apply.

This court has stated, in the context of the discovery rule, that when "the pleading does not reveal when the limitations period began to run . . . the statute of limitations cannot justify Rule 12 dismissal." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011). Several of our sister circuits have held the same. *See USPPS, Ltd. v. Avery Dennison Corp.*, 676 F.3d 1341, 1345 (Fed. Cir. 2012) ("[W]hen reviewing a trial court's dismissal under Federal Rule of Civil Procedure 12(b)(6), [an appellate court is] required to accept all well-pleaded facts as true" and cannot

19

dismiss a complaint unless it can "definitively say that the discovery rule . . . [does] not apply." (internal quotation marks and citation omitted)), *vacated on other grounds*, 133 S. Ct. 1794 (2013); *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (stating that dismissal may be appropriate when "the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense"); *Jones v. Rogers Mem. Hosp.*, 442 F.2d 773, 775 (D.C. Cir. 1971) (holding that the "statute of limitations is an affirmative defense, Fed. R. Civ. P. 8(c), and need not be negatived by the language of the complaint").

The District Court appears to have relied on the non-precedential opinion in *Brawner v. Education Management Corp.*, 513 F. App'x 148 (3d Cir. 2013) (*per curiam*). In that case, this court dismissed a complaint in which a former student sued the Art Institute of Philadelphia based on his unsatisfactory experience. *Id.* at 149-50. He brought suit in 2011, but had attended the school in the late 1990s, and his last dealing with the school was in 2005. *Id.* at 150-51. This court determined that "no reasonable factfinder could conclude that [the plaintiff] filed within the limitations period." *Id.* at 150. However, our conclusion was based on the plaintiff's "complaint and other filings" which showed that "he knew he was injured and made repeated inquiries of the various defendants." *Id.* at 151. In other words, the *Brawner* plaintiff "effectively [pleaded himself] out of court by alleging facts that [were] sufficient to establish the defense." *See Hollander*, 457 F.3d at 691 n.1.

In this case, Schmidt has not pleaded himself out of court. As discussed in further detail below, nothing in Schmidt's complaint clearly suggests that he did in fact have

20

knowledge of the full scope of his injury prior to June 8, 2010. Instead, the District Court dismissed Schmidt's complaint for failing to affirmatively show that he exercised "reasonable diligence" with respect to discovering his injury. Requiring Schmidt to make a showing of reasonable diligence was premature. The District Court effectively required Schmidt to plead around an affirmative defense in his complaint, which is inconsistent with Rules 8 and 12(b)(6) and with this court's decision in *Barefoot Architect*.

Under a *de novo* review, applying the proper standards as discussed *supra*, we conclude that it is not evident on the face of the complaint and documents properly considered at the motion to dismiss stage whether the discovery rule saves Schmidt's claims. Because Schmidt limits his appeal to the claims involving the allegedly improper sales of the Aminosterol Assets, IL9, and Pexiganan, we only need to consider the facts pertaining to these transactions.

As to the Aminosterol Assets, Ohr's August 2009 SEC filing establishes that the Aminosterol Assets were sold on August 21, 2009, for $200,000. Thus, Schmidt's claims arising out of this transaction are untimely unless the discovery rule applies. It is not clear whether "reasonable diligence" should have required Schmidt to look at the SEC filings of a company that heretofore had nothing to do with Genaera. There is no evidence within the complaint or other integral documents to show that Schmidt knew or should have known the identity of the buyer. If he did know the identity, perhaps a court could find that "reasonable diligence" required him to seek out the buyer's SEC filings to find the sale price of the assets. However, there is no indication in the

21

pleadings or integral documents that Schmidt had this information.

As to the IL9 Assets, Ligand's SEC filing dated May 18, 2010, establishes that Ligand purchased the IL9 Assets on May 18, 2010 for $2.75 million, and Ligand conveyed a 50% interest to BVF on May 20, 2010 for $1.375 million. As discussed, *supra*, these dates are before June 8, 2010, and Schmidt's claims as to them are untimely unless the discovery rule applies. As with the Aminosterol Assets, it is unclear whether "reasonable diligence" requires Schmidt to seek out the SEC filings of a company previously unassociated with Genaera. Again, the crucial missing link is any evidence in the record showing that Schmidt knew or should have known of the identity of the buyer. If he had known the buyer's identity, he might reasonably be charged with looking at the buyer's SEC filings to determine the purchase price of the assets and the fact of the allegedly fraudulent circumstances surrounding the sale, such as BVF's reduction of its Ligand ownership and its immediate acquisition of a 50% interest in IL9. However, it is impossible to tell based on the documents properly considered at this stage how much Schmidt knew, and when.

As to the Pexiganan Assets, the date of sale cannot be determined on the basis of any document that we may consider that may have been available to Schmidt before June 8, 2010. Thus, dismissal of Schmidt's claims with respect to the Pexiganan sale was not appropriate at the motion to dismiss stage.

Moreover, the existence of the fiduciary relationship between Schmidt, as a former shareholder, and several of the

22

defendants weighs in favor of finding that the discovery rule tolls the limitations period for all three of the assets at issue. "[T]he existence of a fiduciary relationship is relevant to a discovery rule analysis precisely because it entails such a presumptive level of trust in the fiduciary by the principal that it may take a 'smoking gun' to excite searching inquiry on the principal's part into its fiduciary's behavior." *In re Mushroom Transp. Co.*, 382 F.3d at 343 (applying Pennsylvania's discovery rule). The District Court held Schmidt to a standard of "reasonable diligence" in determining that Schmidt should have known of his injuries by June 8, 2010. However, the concept of "reasonable diligence" in the fiduciary context is more deferential to plaintiffs, and acknowledges that it might take a "smoking gun" for a plaintiff to be on notice of a fiduciary's wrongdoing. There is nothing in the limited record we may consider at this stage that amounts to the sort of "smoking gun" that would trigger Schmidt's diligence obligations.

In summary, it was premature for the District Court to dismiss Schmidt's complaint on statute of limitations grounds at this early stage of the litigation. Because Schmidt's allegations do not facially show that his claims as to Aminosterol, IL9, and Pexiganan are time-barred, their dismissal by the District Court must be reversed.

D.

The defendants offer a host of alternative bases for affirming dismissal, and urge this court to affirm on those bases. It is premature to consider those arguments, which the District Court did not reach and Schmidt did not brief on appeal.

23

## IV.

The claims arising out of the sales of the Aminosterol Assets, IL9, and Pexiganan cannot be considered time-barred at this stage. We will reverse the portion of the District Court's order dismissing these claims. Because the District Court's dismissal of the rescission and punitive damages claims was based on its statute of limitations ruling, we will also reverse the decision as to those claims. Finally, because the District Court dismissed counts 4-8 with prejudice based on its statute of limitations ruling, we will also reverse the dismissal with prejudice of those counts. The remainder of the order will be affirmed.

*Schmidt v. Skolas*

No. 13-3750

---

**RENDELL**, <u>Circuit Judge</u>, <u>dissenting</u>:

I see no reason to remand this case to the District Court and would affirm. As the Majority notes: "Schmidt did not dispute the applicability of the two-year statute of limitations and acknowledged that he filed suit more than two years after the relevant assets were sold." (Maj. Op. 6.)[1] Schmidt's main argument on appeal is that the District Court improperly considered matters outside the record regarding the events in question in dismissing his case. This is a diversionary tactic, and is incorrect.

The District Court's reference to documents in its opinion that demonstrate that Schmidt's concession was correct, i.e., that all the events in question did occur prior to the requisite two-year period, was not necessary to the dismissal. Once Schmidt conceded his tardiness, the sole relevant issue was whether the discovery rule would save him, and the District Court determined, based on Schmidt's own assertions, that it would not. Schmidt's protestations and Majority's extensive narrative as to what the Amended Complaint revealed are, therefore, a red herring and beside the point.

---

[1] At oral argument before the District Court, Schmidt's counsel acknowledged that "we missed the two-year period by a couple of weeks." (App. 1576a.)

The District Court's ruling was based on the fact that Schmidt failed to assert why, with the exercise of reasonable diligence, he could not have known of the injury, i.e., that the prices were too low, as the discovery rule requires. *Dilworth v. Metro. Life Ins. Co.*, 418 F.3d 345, 349 (3d Cir. 2005). The Majority makes passing reference to a weaker burden that Schmidt could actually satisfy, i.e., that he didn't know the prices until later. But that is not the test or the burden. Schmidt has never come close to setting forth any facts as to why he, a very sophisticated investor, who kept himself aware of the value of these assets, could not have known, after the proxy statement revealed the dissolution plan in May 2009, that the sale prices – presumably available through some investigation – were inadequate.[2]

---

[2] In the Amended Complaint, Schmidt pled facts that actually undermined the applicability of the discovery rule. He stated that "[i]n 2009, Genaera had several valuable assets" including IL9, Pexiganan, and the Aminosterol Assets, and that "[t]hese were all valuable assets in which Genaera had invested large sums of money in their development over the previous decade." (App. 67a-68a.) He also stated that he "throughout the years has held many conversations with Genaera officers and directors concerning the Core Assets, their value and the prospects for their commercial exploitation and/or monetization." (App. 69a.) If he knew that the assets were so valuable and that they had been the subject of considerable investment over the previous decade, then surely he was on inquiry notice when he received the proxy statement indicating that Genaera was liquidating its shares for pennies on the dollar.

2

Indeed, before the District Court at oral argument, Schmidt's counsel conceded that Schmidt received notice in 2010 of sales of certain assets previously owned by Genaera and that, for the next two years, "he was putting together all the facts and circumstances." (App. 1583a.) Before our panel at oral argument, Schmidt's counsel insisted that the discovery rule applies because he did not "learn" of the Defendants' alleged wrongdoing until 2011. That argument is insufficient because "a plaintiff's subjective knowledge is insufficient to invoke the discovery rule." *Vitalo v. Cabot Corp.*, 399 F.3d 536, 543 (3d Cir. 2005). In other words, "[m]istake, misunderstanding, or lack of knowledge in themselves do not toll the running of the statute." *Fine v. Checcio*, 582 Pa. 253, 266 (2005). At oral argument, despite repeated questions, Schmidt did not provide any indication of what, if anything, he did by way of diligence, or any reason why he *could not* have learned of the alleged wrongdoing earlier.

A plaintiff, faced with a clear "miss" of the statute of limitations, must come forth with some basis for invoking the discovery rule. *See Mest v. Cabot Corp.*, 449 F.3d 502, 511 (3d Cir. 2006) ("the plaintiff attempting to apply the discovery rule bears the burden of demonstrating that he exercised reasonable diligence in determining the existence and cause of his injury."). *See also Hocker v. CitiMortgage, Inc.*, Civ. 09-973, 2012 WL 174967, at *3 (M.D. Pa. Jan. 20, 2012) (dismissing claims because "Plaintiff has failed to meet her burden of establishing equitable tolling because she has made no argument as to how she was reasonably diligent in investigating and bringing the instant claims . . . ."); *Haagensen v. Pennsylvania State Police*, Civ. 08-727, 2009 WL 1437608, *6 (W.D. Pa. May 21, 2009) (recommending

dismissal because "Plaintiff bears the burden of demonstrating that these exceptions [discovery rule or equitable tolling] to the statute of limitations apply.").

As the District Court explained in its opinion, "to toll the statute of limitations on every plaintiff's mere assertion that he needed time to put together all the facts and circumstances would eviscerate the very concept of a limitations period." (Dist. Ct. Op. 12.) "Although the purpose of the 'discovery rule' is to mitigate in worthy cases the harshness of an absolute and rigid period of limitations, the rule cannot be applied so loosely as to nullify the purpose for which a statute of limitations exists." *Ingenito v. AC & S, Inc.*, 633 A.2d 1172, 1176 (Pa. Super. Ct. 1993). This is not a matter of consideration of matters outside the record; this is, instead, a matter of what a plaintiff who has failed to comply with the statute of limitations must do to satisfy the discovery rule.

Tellingly, Schmidt does not argue that there are facts he would have adduced if this matter had been treated, as he urges, as a motion for summary judgment.[3] I suggest there are none, and remand is therefore unnecessary. I would affirm.

---

[3] I suggest that to tell District Court judges that, in deciding a motion to dismiss, they cannot take into account the concessions and candor of counsel at oral argument unless they first convert the motion to one for summary judgment is to exalt form over substance and waste judicial resources.

4