OPINION *
SHWARTZ, Circuit Judge.
Joseph Downs, Thomas Dunkel, USMR Fund 2, and Oakmont Note Group LLC (collectively, “Plaintiffs”) brought suit against 2012 1 JY Holdings LLC, Peter Andrews, Gregory Palmer d/b/a Dream-builders Investments LLC, and Gregory Palmer (collectively, “Defendants”) for common law fraud and conspiracy and concert of action in the commission of fraud. App. 39-46. The District Court dismissed Plaintiffs’ complaint under the “gist of the action” doctrine pursuant to Fed.R.Civ.P. 12(b)(6) and for failure to join a party under Fed.R.Civ.P. 19. App. 5-29. Plaintiffs urge us to .remand to the District Court for its consideration of Bruno v. Erie Ins. Co., 106 A.3d 48 (Pa.2014), a Pennsylvania Supreme Court decision addressing the gist of the action doctrine that was published days before the District Court ruled. For the reasons that follow, we will affirm.
I[1]
The parties buy and sell mortgage notes. App. 41. In previous transactions, Defendants Andrews' and Palmer, through their companies Dreambuilders and JF Holdings, purchased mortgage notes from banks and other institutions, and sold them to buyers such as Plaintiffs Downs and Dunkel, through Plaintiffs’ company Oakmont, App. 41, who could then collect on the notes or resell them for a profit.
In March 2012, Plaintiffs and Defendants discussed the purchase of a group of 171 mortgage notes (the “notes”) at a discount, if Plaintiffs provided full payment of approximately $740,000 in advance of the sale.[2] Defendants claimed they needed the money to complete the purchase, which *818 was part of a much larger block of loans. App. 42. Interested in the opportunity but lacking access to that amount of cash, Downs and Dunkel entered into a verbal agreement with a third party, Remar Investments LP, to advance the entire $740,000. App. 42. Remar’s investment was contingent upon several terms, including Downs and Dunkel personally guaranteeing the investment and that Remar be listed as the notes’ initial purchaser, to eventually be assigned to a newly created LLC, USMR Fund 2, of which Remar would own 51% and Downs and Dunkel, through Oakmont, would own 49%. App. 42.
After Remar wired the funds necessary for the purchase, Defendants timely delivered the first fifty-nine notes.[3] App. 43. The remaining 112 notes were slated for delivery five days later, but did not arrive on time. App. 43-44. According to the complaint, only $399,000 of the notes have been delivered. App. 44.
Plaintiffs filed suit in the Eastern District of Pennsylvania in Oakmont’s name only. App. 326. Their initial complaint was dismissed without prejudice for lack of subject matter jurisdiction. Plaintiffs refiled their suit, making largely the same allegations, and adding Downs and Dunkel individually and USMR Fund 2 as plaintiffs, but omitting Remar. App. 39-46.
Defendants filed a motion to dismiss for, among other things,[4] failure to state a claim and failure to join a party under Rule 19, pursuant to Fed.R.Civ.P. 12(b)(6) and (7), respectively.[5] App. 56-93. The District Court granted Defendants’ Rule 12(b)(6) motion because their claims were barred by the gist of the action doctrine.[6] App. 25-29. The District Court found that the “heart” of Plaintiffs’ claims was “that the [Djefendants did not deliver the en *819 forceable mortgage notes that the plaintiffs were due under the contract and the subsequent ... assignment.” App. 28. As a result, the District Court concluded that Plaintiffs’ claims sounded in contract, not tort, requiring- dismissal under the gist of the action doctrine. ■ App. 28-29. The District Court reached this conclusion without addressing the Pennsylvania Supreme Court’s decision in Bruno, published three days before the District Court issued its opinion in this case. See App. 5; see also Bruno, 106 A.3d at 48.
Plaintiffs appeal, arguing that the District Court’s failure to consider the Bruno decision necessitates remand for further consideration.
II[7]
Plaintiffs contend that the District Court failed to adequately analyze the “nature of the duty alleged to have been breached,” as required by Bruno. Bruno, 106 A.3d at 68; See Appellants’ Br. 18. This argument is unavailing. Although the District Court did not address Bruno, its analysis was consistent with that opinion.
The gist of the action doctrine provides that a tort claim “based on [a] party’s actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action ... although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations.” Id. at 53. Thus, to evaluate whether the gist of the action doctrine applies, a court must identify the duty breached, because “the nature of the duty alleged to have been breached ... [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract.” Id. at 68. “In this regard, the substance of the allegations comprising a claim in a plaintiffs complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort ... is not controlling.” Id. Put simply, consistent with Bruno and its predecessors,[8] to determine whether an action is barred by the gist of the action doctrine, we must examine the factual allegations and ask, “[w]hat’s this case really about?” Pediatrix Screening, Inc. v. TeleChem Int’l, Inc., 602 F.3d 541, 550 (3d Cir.2010).[9]
This case is about Defendants’ alleged failure to fulfill their contractual promises *820 to deliver all of the purchased notes. Even though Plaintiffs allege that the delivery did not occur “because the outstanding notes were never owned by Defendants and [which they] fraudulently represented as being owned or controlled,” App. 44, and “Defendants do not have the funds fraudulently procured or the notes promised having used the funds and notes to perpetuate an on-going Ponzi scheme,” App. 45, the obligation to perform was the result of the contract. See Bruno, 106 A.3d at 69-70 (holding that the claim was not barred, in part, because it was not founded on the breach of any specific exec-utory promise contained in the contract). Thus, regardless of Plaintiffs’ assertions about why the notes were not delivered, the crux of their action is that Defendants failed to deliver the notes as required under the contract, and hence, “the duty breached is one created by the parties by the terms of their contract.” Id. at 68 (when facts establish that “the duty breached is one created by the parties by the terms of their contract,” the claim “is to be viewed as one for breach of contract”).
Like the Bruno court, the District Court appropriately focused on the nature of the duty alleged to be breached, not merely on whether the contractual duties were sufficiently intertwined with the alleged torts. It explicitly held that “[t]he heart of the plaintiffs’ fraud claim ... is that the defendants did not deliver the enforceable mortgage notes,” which “violated an obligation created by contract, rather than by ‘the larger societal policies embodied in the law of torts.’ ” App. 28 (quoting Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 104 (3d Cir.2001)). Because the District Court examined the gist of the action doctrine consistent with Bruno, and reached the correct outcome, there is no need for remand.
Plaintiffs cannot rescue their claim by attempting to cast their complaint as one alleging breach of a different duty, such as fraud in the inducement or misrepresentation regarding how their money would be used. Pennsylvania state and federal courts have reached different conclusions about whether the gist of the action doctrine applies to fraudulent inducement claims. Compare Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 719 (Pa.Super.Ct.2005) (allowing claim for fraud in the inducement to proceed where defendant allegedly agreed to perform obligations it had no intention to perform to induce a change in the contract) with Vives v. Rodriguez, 849 F.Supp.2d. 507, 518-20 (E.D.Pa.2012) (collecting cases and holding a fraudulent inducement claim barred by the gist of the action doctrine); see Wen v. Willis, 117 F.Supp.3d. 673, 681 (E.D.Pa. 2015) (“[W]here the precontractual statements that are the basis for the fraudulent inducement claim concern specific duties that the parties later outlined in the alleged contract,” the claim may be dismissed under the gist of the action doctrine) (quoting Integrated Waste Sol’ns, Inc. v. Goverdhanam, No. 10-2155, 2010 WL 4910176, at *11 (E.D.Pa. Nov. 30, 2010)). However, we need not decide whether fraud in the inducement claims are categorically barred under the gist of the action doctrine because the pleadings demonstrate that this case is about a failure to perform under the contract. Plaintiffs’ complaint demonstrates that the primary basis for alleging that fraudulent activity induced the contract is the fact that the notes were not all delivered in accordance with the contract, not a failure to fulfill a separate societal duty which may exist in other cases. Similarly, the allegation that Plaintiffs’ funds were used for transactions unrelated to purchasing the notes simply' underscores the conclusion that Plaintiff’s claim that the Defen *821 dants failed to hold up their end of the bargain. See App. 45-46.
Because the “nature of the duty” alleged to be violated arises out of Defendants’ contractual promises to deliver the notes, and not a broader social duty, see Bruno, 106 A.3d at 68, we will affirm the District Court’s dismissal of the complaint pursuant to the gist of the action doctrine.
Ill
For the foregoing reasons, we will affirm the order of the District Court.

 This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

. In reviewing an order granting a Rule 12(b)(6) motion, we "accept all factual allegations as true, construe the complaint in- the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.” Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (internal quotation marks omitted). We may generally consider “only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record,” along with "document[s] integral to or explicitly relied upon in the complaint.” Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir.2014) (citation and quotation marks omitted).

. Without the discount Defendants offered, the notes would have cost $979,000. App. 42.

. Although Plaintiffs concede that the first group of notes was delivered on time, they allege that "35 of the 59 loans ... were unenforceable either because the loans lacked the necessary documentation or some other fundamental deficiency.” App. 44.

. Defendants also sought dismissal based upon a lack of personal jurisdiction and improper venue. The District Court held that it had both subject matter and personal jurisdiction over the case and parties, and that venue was proper in the Eastern District of Pennsylvania. App. 11-20. No party appeals these rulings.

. The District Court held that Remar was a necessary party under Rule 19(a)(1)(B), because: (1) Remar was a party to the initial contract, and (2) it was unclear the extent to which Remar had assigned its obligations to Plaintiffs. App. 22-24. As a result, the District Court found that Remar's absence would "leave an existing party subject to a substantial risk of incurring ... multiple ... inconsistent obligations because of the interest,” Fed.R.Civ.P. 19(a)(1)(B), and for this additional reason, dismissed the complaint. App. 22. Based on the record before the District Court, there is no indication that Remar is a citizen of either New York or New Hampshire, the states where Defendants reside. See App, 12 (Defendants are citizens of New York and New Hampshire); see also D.C. ECF No. 34-6 (affidavit of Daniel Miller, Remar principal, stating that Remar Holdings, LLC is a California LLC, which is the general partner of Remar Investments LP, a Nevada partnership). While we understand the District Court’s frustration with Plaintiffs’ failure to provide additional information, it appears that, even if joined, Remar’s presence would not destroy diversity. Therefore, we need not address the Rule 19 ruling to satisfy ourselves we have subject matter jurisdiction. Moreover, because we affirm the District Court’s dismissal based on the gist of the action doctrine, we need not address whether the dismissal under Rule 19 was proper.

.The District Court discussed the gist of the action doctrine under both Pennsylvania and New York law. Although Defendants appear to have argued that New York law applied based on a choice of law provision in their contract with Plaintiffs, no party argues before us that New York law is controlling.

. The District Court had jurisdiction pursuant to 28 U.S.C, § 1332, We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over an order granting a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir.2011).

. Most notable among these prior cases was eToll, Inc. v. Elias/Savion Advert., Inc., 811 A.2d 10, 14 (Pa.Super.Ct.2002), which applied the gist of the action doctrine to fraud cases. eToll held that a tort claim is subject to the gist of the action doctrine if it arises solely from the contract between the parties, where the duties allegedly breached were based in the contract itself, where "liability stems from a contract,” or where the claim is essentially a duplication of a breach of contract claim or the success of a claim is entirely dependent, and hence "inextricably intertwined” with the contract’s terms. Id. at 19, 21. The Bruno court read eToll’s "inextricably intertwined” language narrowly, affirming its applicability only insofar as it could be viewed in the context of determining "whether the nature of the duty upon which the breach of contract claims rest is the same as that which forms the basis of the tort claims.” Bruno, 106 A.3d at 68-69, 69 n. 17.

.Plaintiffs present additional material in their brief and appendices, including emails between the parties and information about a case filed in another district. See Appellants’ Br. 33-40. In accordance with Rule 12(b)(6), we limit our analysis to the facts as alleged in the complaint, its'attached exhibits, and documents integral to or explicitly relied upon in the complaint. See Skolas, 770 F.3d at 249.