**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2227
_____

ALEKA RUGGIERO,
                              Appellant

v.

MOUNT NITTANY MEDICAL CENTER;
MOUNT NITTANY HEALTH SYSTEM, d/b/a Mount Nittany Health

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 4-16-cv-01996)
District Judge: Honorable Matthew W. Brann
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 23, 2018
_____

Before:  HARDIMAN, VANASKIE, and SHWARTZ, *Circuit Judges*

(Opinion Filed: June 5, 2018)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

VANASKIE, *Circuit Judge.*

At issue in this appeal is whether Appellant Aleka Ruggiero stated plausible

claims for relief against Appellee Mount Nittany Medical Center ("MNMC") for

violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*,

when MNMC terminated her employment because she refused to get a required vaccine.

Although the issue is close, we conclude that Ruggiero's allegations are sufficient to

survive a motion to dismiss. Accordingly, we will vacate the District Court's order

dismissing Ruggiero's complaint and remand the case for further proceedings consistent

with this opinion.

I.

Ruggiero worked as a registered nurse at MNMC.[1] Ruggiero suffers from severe

anxiety and eosinophilic esophagitis, which limit her ability to perform certain life

activities, such as eating, sleeping, and engaging in social interactions. Despite her

impairments, Ruggiero was able to perform her duties as a nurse at MNMC.

On April 22, 2015, Ruggiero received a memorandum from MNMC advising her

that all clinical employees were required to receive a vaccine for tetanus, diphtheria, and

pertussis (the "TDAP vaccine"). The memorandum set May 15, 2015, as the deadline to

---

[1] The following facts are generally taken from Ruggiero's complaint and are assumed to be true for the purposes of this motion. To the extent passages are excerpted from documents not attached to the complaint, we consider them because the documents were integral to and explicitly relied upon in the complaint. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

receive the vaccine, and provided a telephone number for employees to call with questions about the vaccine. Ruggiero did not receive the vaccine by the deadline.

When MNMC notified Ruggiero that she had missed the deadline, she responded that she had made an appointment with her doctor regarding the vaccine. On June 5, 2015, Ruggiero faxed MNMC a note from her doctor, Dr. Suzanne Dib, which read: "The above named patient is medically exempt from receiving tdap immunization for medical concerns." (JA 90.) On June 10, 2015, MNMC responded to Dr. Dib, enclosing information from the vaccine manufacturer and asking Dr. Dib to identify which of the eight contraindications, warnings, or precautions listed by the manufacturer prevented Ruggiero from receiving the vaccine. On July 10, 2015, Dr. Dib replied, stating the following:

> Aleka Ruggiero is medically exempt from receiving the Tdap immunization due to severe anxiety with some side effects she read with this injection, especially with her history of having many food allergies, environmental allergy and eosinophilic esophagitis. Patient being terrified, I feel the risk of this Tdap injection outweighs the benefits. [Plaintiff] understands the risks of not getting this immunization.

(*Id*. at 98.) Dr. Dib did not say that Ruggiero suffered from any of the contraindications, warnings, or precautions listed by the vaccine's manufacturer. On July 15, 2015, MNMC issued a letter to Ruggiero, stating, "[T]he documentation provided by Dr. Dib does not meet the definition of medical contraindication as detailed in the manufacturer's vaccine literature and thus Tdap immunization is required." (*Id.* at 41.) The letter set July 21, 2015, as the new deadline for receiving the vaccination.

3

At some point, Ruggiero suggested a possible accommodation—permission to wear a mask instead of receiving the vaccine. Ruggiero alleges that other nurses were permitted to wears masks to accommodate their refusals to receive the flu vaccine. In any event, Ruggiero did not receive the vaccine by the newly imposed deadline. MNMC removed Ruggiero from work on July 22, 2015, and formally terminated her on July 31, 2015.

Ruggiero filed suit alleging that her former employer violated the ADA by: (1) failing to reasonably accommodate her; (2) discriminating against her because of a disability; and (3) retaliating against her for requesting an accommodation.[2] MNMC moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

The District Court granted MNMC's motion to dismiss without prejudice. At the outset, the District Court determined that Ruggiero had plausibly alleged she was a qualified individual with a disability under the ADA. However, with regard to her reasonable accommodation claim, the District Court concluded that Ruggiero had failed to allege MNMC was on notice of Ruggiero's alleged disability and request for an accommodation. The District Court also determined that, in any event, MNMC had satisfied its obligations under the good faith interactive process as a matter of law when

---

[2] Although Ruggiero initially filed suit against MNMC and Mount Nittany Health System, the parties stipulated to the dismissal of Mount Nittany Health System on October 19, 2016.

it notified Ruggiero that it would exempt her from vaccination if she suffered from any of the contraindications, warnings, or precautions identified by the manufacturer.

Next, the District Court dismissed Ruggiero's discrimination claim on the grounds that her allegations were too conclusory, and she had failed to plead the requisite causation. The District Court also dismissed her retaliation claim on the grounds that her allegations were too conclusory, and she had failed to allege protected activity. Lastly, the District Court granted Ruggiero leave to amend her complaint to add claims under the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, and to correct the deficiencies identified in the Court's Memorandum Opinion dismissing her ADA claims. Ruggiero did not submit any proposed amendments, and the District Court dismissed her suit.

Ruggiero now appeals the dismissal of her ADA claims. The Equal Employment Opportunity Commission ("EEOC") has appeared as *amicus* in support of Ruggiero.

II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's decision to grant a motion to dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009).

III.

First, we will address Ruggiero's reasonable accommodation claim. Then we will discuss her discrimination and retaliation claims.

"Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] . . . ." *Id.* at 311 (alteration in original) (quoting 29 C.F.R. § 1630.2(o)(3)). Initiating such a process, however, requires that the employer first be put on notice of a disability and request for accommodation. Under the ADA, adequate notice simply requires that an employee "provide[] the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." *Id.* at 313. As we explained in *Taylor*, "[t]o raise the bar for triggering the interactive process any further would essentially nullify the process." *Id.* at 314.

Once notice is provided, each party thereafter assumes certain duties during the interactive process. In *Taylor*, we agreed with the reasoning expressed by the Seventh Circuit, which held that:

> [B]oth parties bear responsibility for determining what accommodation is necessary . . . [N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts

6

should attempt to isolate the cause of the breakdown and then assign responsibility.

*Id.* at 312 (quoting *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996) (internal quotation marks omitted)). We explained in *Taylor* that an employer can show its good faith in many ways, such as: meeting with the employee; requesting information about the employee's condition and limitations; asking the employee what accommodation she wants; showing some sign of having considered her request; and offering and discussing available alternatives when the request is too burdensome. *Id.* at 317.

This backdrop provides helpful context in considering whether Ruggiero has satisfied the pleading standards for establishing a claim under the ADA. Here, the District Court dismissed Ruggiero's reasonable accommodation claim on two grounds: (1) Ruggiero had failed to plead notice; and, in any event, (2) the allegations demonstrated that MNMC had satisfied its obligations under the interactive process as a matter of law. We disagree with both conclusions.

First, the facts alleged in the complaint plausibly suggest that MNMC knew of Ruggiero's alleged disability and her desire for an accommodation. Ruggiero alleged that she made an appointment with her doctor to discuss the required vaccine, and her doctor recommended not receiving the vaccine because of her medical conditions. She also alleged that her doctor memorialized her recommendation in two notes that were provided to MNMC. In addition to her request for an exemption, Ruggiero alleges she sought permission to wear a mask as an alternative accommodation. These facts are

7

sufficient to support an inference that MNMC knew of Ruggiero's alleged disability and that Ruggiero communicated to MNMC her desire for an accommodation. *See, e.g.*, *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621–22 (5th Cir. 2009) (recognizing that a doctor's note requesting an exception or adjustment to an employer's practices may serve as a request for an accommodation); *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 804 (7th Cir. 2005) (same). Moreover, the fact that MNMC requested more information from Ruggiero to determine if an exemption from the vaccine requirement was warranted renders implausible any suggestion that MNMC was not on notice of Ruggiero's desire to be accommodated.

Second, Ruggiero's allegations raise the plausible inference that MNMC failed to properly engage in the interactive process. Ruggiero requested an accommodation— either an exemption from the vaccine requirement or permission to wear a mask—but both were rejected by MNMC without proposing an alternative. *See Sears*, 417 F.3d at 807 ("Sears was not obligated to provide this accommodation, but it also could not simply reject the request and take no further action."). These allegations plausibly suggest that MNMC prematurely ceased the interactive process and barred Ruggiero from the individualized inquiry to which she was entitled under the ADA.

In its brief, MNMC argues an alternative ground for affirmance—that the District Court properly dismissed Ruggiero's reasonable accommodation claim because she failed to plausibly allege an actual disability.[3] This argument likewise lacks merit. In

---

[3] MNMC also argues that Ruggiero failed to plead a "regarded as" or "record of" disability. MNMC is correct. An individual is "regarded as" having a disability if she

8

her pleadings, Ruggiero identified her specific impairments (severe anxiety and eosinophilic esophagitis) and further alleged that those impairments limited certain life activities such as sleeping, eating, and engaging in social interaction. This was sufficient to permit a plausible inference that she was a qualified person with a disability within the meaning of the ADA. *See Fowler*, 578 F.3d at 213 ("[The plaintiff] is not required, at this early pleading stage, to go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations."); *see also* 29 C.F.R. § 1630.2(j)(1)(i) ("The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard."); 29 C.F.R. § 1630.2(j)(1)(iii) ("[T]he threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis.").

To summarize, the allegations in the complaint raised three plausible inferences: (1) Ruggiero was a qualified individual with a disability; (2) MNMC was on notice of Ruggiero's alleged disability and request for an accommodation; and (3) MNMC failed

---

establishes she suffered discrimination because of a perceived impairment "whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Here, Ruggiero has not adequately alleged a "regarded as" disability, because the phrase is invoked only twice in a conclusory manner in the complaint. She also does not allege how, if it all, MNMC viewed her as disabled. Ruggiero has also not pleaded a "record of" disability. "An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). Like the "regarded as" assertion, Ruggiero makes only passing reference to a "record of disability," as part of two conclusory allegations in the complaint, and she nowhere alleges that MNMC relied upon any record of disability in deciding to terminate her employment. *See* JA 42, 44 (Compl. ¶¶ 27, 33.)

to satisfy its obligations to engage in the interactive process. At the pleadings stage, these inferences are sufficient to allow the failure to accommodate claim to proceed.

## IV.

We turn next to Ruggiero's discrimination claim. To establish a claim of disability discrimination, a plaintiff must show that she: "(1) . . . is a disabled person within the meaning of the ADA; (2) . . . is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) . . . has suffered an otherwise adverse employment decision as a result of discrimination." *Taylor*, 184 F.3d at 306 (quoting *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998)). However, at the pleading stage, a plaintiff need not establish a *prima facie* case of discrimination. *Fowler*, 578 F.3d at 213. Rather, as we explained in *Fowler*, a complaint is sufficient when it "pleads how, when, and where [the employer] allegedly discriminated against [the employee]" such that an employer is on notice of the basis of the claim against it. *Id.* at 212.

Ruggiero's complaint satisfied *Fowler* by alleging that MNMC discriminated against Ruggiero when it terminated her on July 31, 2015 after receiving two doctor's notes indicating that she should be exempted from receiving a required vaccine for medical reasons. Her termination may provide an inference of discrimination when considered alongside her allegation that other MNMC employees were allowed to not have the TDAP vaccine and remain employed with MNMC. The District Court's decision to dismiss this claim as inadequately pled was therefore premature.

## V.

10

We conclude by discussing the retaliation claim. To establish a claim for retaliation, a plaintiff must show, "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004) (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567–68 (3d Cir. 2002)).

The District Court dismissed the retaliation claim on the grounds that Ruggiero failed to allege that she participated in protected activity and that her claim was too conclusory. This was error. Ruggiero's good faith request for an accommodation—*i.e.*, exemption from the vaccine requirement—was protected activity under the ADA sufficient to support a retaliation claim. *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003). Furthermore, Ruggiero identified protected activity (her request for an accommodation) and an adverse action (her termination). The temporal proximity between her request for an accommodation and her termination raises a plausible inference of causation. *See Moody v. Atlantic City Bd. of Educ.*, 870 F.3d 206, 221 (3d Cir. 2017) (explaining that temporal proximity between protected activity and adverse action, when "unduly suggestive," may provide evidence of a causal connection). Thus, dismissal of her retaliation claim was premature.

VI.

For these reasons, we will vacate the order of the District Court dated June 1, 2017, and remand for further proceedings consistent with this opinion.