**Mark A. SULLIVAN, Appellant**

v.

**CHARTWELL INVESTMENT PARTNERS, LP,**
**Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 7, 2004.

Filed April 5, 2005.

712

Karl L. Prior, King of Prussia, for appellant.

Sean P. McDervitt, Berwyn, for appellee.

Before: BOWES and McCAFFERY, JJ., and MCEWEN, P.J.E.

BOWES, J.:

¶ 1 Mark A. Sullivan appeals from the trial court order entered on November 17, 2003, granting Appellee's, Chartwell Investment Partners, LP, preliminary objections to Appellant's amended complaint and dismissing it with prejudice. We vacate the order and remand.

¶ 2 On November 19, 2002, Appellant initiated this action by filing a civil complaint against Appellee, his former employer, alleging violations of the Wage Payment and Collection Law and asserting claims relating to breach of contract, promissory estoppel, fraud, and negligent misrepresentation. On April 21, 2003, the trial court sustained Appellee's preliminary objections in the nature of a demurrer but granted Appellant leave to file an amended complaint. On May 12, 2003, Appellant filed an amended complaint, wherein he altered one of the bases of his recovery and conceded that he was an at-will employee. The amended complaint contained similar counts as the prior complaint; however, it also included an allegation that Appellee violated the Pennsylvania Limited Partnership Act. On October 30, 2003, the trial court sustained Appellee's demurrer to the amended complaint but again, permitted Appellant to amend the complaint. After Appellant refused to amend his complaint any further, the trial court entered its November 17, 2003 order dismissing the amended complaint with prejudice. This appeal followed.

¶ 3 Appellant raises the following allegations of trial court error:

1. Did the court below wrongly dismiss plaintiff's Amended Complaint in its entirety because the court below erroneously found and concluded that:

(a) "At-will" employment status meant that plaintiff could not state either breach of contract claims or contractual entitlement to compensation under a December 2000 agreement (*Counts I–II* );

(b) Plaintiff did not state either a breach of contract claim or contractual entitlement to severance, the purchase of his ownership interest in the defendant partnership, and unpaid 2002 compensation (*Counts VI and VII* );

(c) Plaintiff was entitled to no relief whatsoever under promissory estoppel theories (*Count III and VIII* );

(d) The gist[-]of[-]the[-]action doctrine barred prosecution of all of plaintiff's fraud and negligent misrepresentation claims and/or plaintiff failed to plead all elements of those claims (*Counts IV, V, IX and X* );

(e) Plaintiff's pleading was legally insufficient to maintain a cause of action for violation of the Pennsylvania Limited Partnership Act (*Count XI* )?

Appellant's brief at 3.

¶ 4 Essentially, Appellant argues that the trial court erred in concluding that no recovery was possible under the amended complaint. Our scope and standard of review follows:

In matters requiring the dismissal of an action based on preliminary objections in the nature of a demurrer this Court's scope of review is plenary. *Belser v. Rockwood Casualty Ins. Co.,* 791 A.2d 1216, 1219 (Pa.Super.2002) (internal citations omitted). "A reviewing court must decide the merits of the preliminary objections 'solely on the basis of the pleadings' and not on testimony or evidence outside the complaint." *Id.* (quoting *Williams v. Nationwide Mut. Ins. Co.,* 750 A.2d 881, 883 (Pa.Super.2000)). A preliminary objection in the nature of a demurrer tests the legal sufficiency of the complaint. The standard of review to be used in deciding such preliminary objections is also well-settled:

When reviewing an order granting preliminary objections in the nature of a demurrer, an appellate court applies the same standard employed by the trial court: all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purposes of review. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the demurrer. *Vulcan v. United of Omaha Life Ins. Co.,* 715 A.2d 1169, 1172 (Pa.Super.1998) (internal citations and quotation marks omitted).

*Insurance Adjustment Bureau, Inc. v. Allstate Ins.,* 860 A.2d 1038, 1041 (Pa.Super.2004).

¶ 5 Appellant pled the following relevant facts in his amended complaint, which we must assume are true. In 1998, representatives of Appellee offered Appellant a position as Vice President of Marketing and Client Services earning a $150,000 annual salary and potential bonuses based on revenue generated by Appellant's clients in a given year. The bonuses were scheduled to be paid in August of the current year and February of the following year, after the prior year's revenues had been calculated. Appellant began his employment in March 1998 receiving his base salary, an August bonus, and a bonus in February 1999. In December 1999, Appellee increased Appellant's base pay to $170,000 effective in 2000. In 2000, Appellant received his $170,000 base salary and an undisclosed August bonus. In February

2001, he received a $75,000 year-end bonus for 2000.

¶ 6 Also in 2000, Appellee proposed increasing Appellant's base salary to $220,000 for 2001, but sought to recalculate the manner in which Appellant's bonuses were to be determined. To prevent Appellant from leaving his employment, Appellee agreed that Appellant's compensation for 2001 would not be less than his compensation for 2000. Appellant accepted the amended compensation package and continued his employment.

¶ 7 In 2001, Appellant was offered a 0.4 % ownership interest in the firm. To avoid the tax consequences of executing the option, Appellant exercised a "phantom purchase," in that no money was exchanged. Thereafter, Appellee's representatives referred to Appellant as one of the thirty-four owners.

¶ 8 On December 19, 2001, a senior executive of the firm informed Appellant that he would not become a partner, would not be promoted, and suggested that Appellant find another job. Appellant did not resign immediately because Appellee agreed to provide him with an industry-standard severance and compensate him for his 0.4% share of the partnership in return for Appellant's continued marketing and business contacts. Appellant retained his position until he found alternative employment. At the end of 2001, Appellant received a year-end bonus of $35,000, which made his 2001 compensation a minimum of $75,000 less than his 2000 compensation. Appellant alleges that the shortfall is the result of Appellee improperly applying the $75,000 bonus for services rendered in 2000 to Appellant's 2001 compensation.

¶ 9 From January 2001 through September 2002, Appellant attended ninety-four meetings, spent fifty-eight days traveling, and logged over 50,000 miles in air travel. In August 2002, Appellant found a position with another firm. Through its managing partner, Appellee requested that Appellant stay until late September so Appellant could introduce some influential clients to his replacement. In addition, Appellee wanted Appellant to organize and chair a charity golf tournament to accommodate its clients and industry contacts. To entice Appellant to stay for the extra period, Appellee promised to purchase Appellant's ownership interest, valued at approximately $92,000, and provide Appellant with a severance package comparable to industry standard, which was one-year base salary plus 401(k) contributions and a commission trailer on Appellant's accounts.

¶ 10 When Appellant received his final paycheck, he did not receive compensation for three unused vacation days. In addition, Appellee refused to compensate Appellant for his ownership interest or provide the promised severance; instead, it threatened to tarnish Appellant's name in the financial community if he insisted on pursuing the severance package.

¶ 11 Appellant's amended complaint raised: 1) five alternative counts seeking compensation under the agreement that was formed in 2000 relating to 2001 compensation (the "Compensation Agreement"); 2) five alternative counts relating to the severance and ownership agreement ("Severance Agreement"); and 3) one count relating to the Pennsylvania Limited Partnership Agreement. As noted *supra*, the trial court sustained Appellee's objection to all eleven counts, holding that the claims either were legally insufficient due to Appellant's status as an at-will employee or were barred by the gist-of-the-action doctrine.

¶ 12 First, Appellant argues that the trial court erred in applying the doctrine of at-will employment to bar the allegations relating to the Compensation

Agreement and the Severance Agreement. As we previously have explained, the at-will employment doctrine "holds that an employer may terminate an employee for any reason at all, unless restrained by contract." *Carlson v. Community Ambulance Services, Inc.*, 824 A.2d 1228, 1232 (Pa.Super.2003). The doctrine creates a strong presumption that a contractual employment relationship does not exist, and it impedes an employee's ability to bring a cause of action for the termination of the employment relationship. *Id.*

■ ¶ 13 We disagree with the trial court's reliance upon the at-will employment doctrine in this case. The trial court concluded that since Appellant was an at-will employee, he could not establish a contractual right to compensation. This conclusion is inaccurate. Appellant's status as an at-will employee is irrelevant to whether a contract existed to provide compensation during the term of his employment. Although Appellant could have been terminated at any point, and in fact was terminated, if the evidence so establishes, he would be entitled to receive the agreed-upon compensation earned prior to his termination. Hence, it was error for the court to sustain Appellee's preliminary objections on this basis.

■ ¶ 14 Next, we must determine whether Appellant pled sufficient facts to establish a claim under the Wage Payment and Collection Law (WPCL) or a breach of contract claim under the Compensation Agreement. Appellant pled these claims in Counts I and II of the amended complaint.

■ ¶ 15 To present a wage-payment claim, Appellant had to aver that he was contractually entitled to compensation from wages and that he was not paid. *See Hartman v. Baker*, 766 A.2d 347 (Pa.Super.2000) (The WPCL establishes employee's right to enforce payment of wages and compensation to which employee is otherwise entitled by terms of existing agreement). Herein, Appellant pled sufficient facts to demonstrate that Appellee agreed that Appellant's total 2001 compensation would equal his total compensation for 2000 in exchange for Appellant's continued employment. Specifically, Appellant pled as follows: "In December 2000, [Appellee] and [Appellant] agreed that in exchange for [Appellant] accepting a change in his bonus package and not then terminating his ... employment (as he had every right to do), [Appellee] would pay [Appellant] as much for his services in 2001 as it did for his services rendered and revenue which he generated in 2000 (inclusive of his February 2001 bonus payment)." Amended Complaint, ¶ 66, at 12. While we observe that Appellant will carry the burden of proving the oral agreement's existence at trial, for purposes of this appeal we are constrained to accept Appellant's averments as true. *See Insurance Adjustment Bureau, Inc., supra* (for purposes of appellate review of demurrer, all material facts averred in complaint are accepted as true).

■ ¶ 16 Similarly, we find Appellant's breach-of-contract claim to be legally sufficient. A breach of contract action involves (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages. *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269 (Pa.Super.2002). While every element must be pled specifically, "it is axiomatic that a contract may be manifest orally, in writing, or as an inference from the acts and conduct of the parties." *Id.* at 1272.

¶ 17 Instantly, Appellant averred that Appellee offered to pay him a guaranteed minimum compensation for 2000 and that Appellant accepted that offer, forgoing his right to resign after Appellee unilaterally altered his compensation scheme. Fur-

ther, Appellant asserted that Appellee breached the agreement by failing to pay him an amount equal to his 2000 earnings. Finally, Appellant pled that he incurred damages in the amount of $75,000 as a result of Appellee's breach. *See* Amended Complaint, ¶¶ 75—81, at 13–14. Accordingly, Appellant sufficiently pled the three elements of a breach-of-contract claim.

¶ 18 Next, we must determine whether Appellant pled sufficient facts to set forth a WPCL claim and a breach of contract claim relating to the Severance Agreement. These claims were raised in Counts VI and VII of the amended complaint; however, we will address them together. As noted *supra,* to present a claim under the WPCL, Appellant had to plead that he was contractually entitled to compensation and that Appellee failed to pay the required compensation.[1] *See Hartman, supra.* Likewise, to present a breach of contract claim Appellant had to plead the existence of a contract, a breach of contractual duty, and resultant damages. *J.F. Walker Co, supra.*

¶ 19 With regard to these claims, Appellant averred that a contract existed under which he would work for Appellee until he acquired a new job so that Appellee could continue to utilize his marketing and business contacts. Appellant also pled that pursuant to the agreement, Appellee promised to pay him the industry-standard severance package and compensate him for his 0.4% equity interest in the firm. Once Appellant found alternate employment, Appellee reiterated its promise so that Appellant would perform additional services. Finally, Appellant asserted that Appellee failed to pay any severance or purchase Appellant's equity interest, resulting in damages in excess of $50,000.

*See* Amended Complaint, at 17–23. Assuming the truth of the facts averred, we conclude that Appellant's pleading sufficiently set forth a WPCL violation and a breach of contract claim relating to the parties' Severance Agreement.

¶ 20 In sustaining Appellee's preliminary objections to these counts, the trial court concluded that the terms of the alleged Severance Agreement were too ambiguous to form a binding contract because the phrase "industry standard" never was defined. We disagree. Appellant specifically averred that the parties knew that the "industry standard" severance package included one year's base salary, 401(k) contributions, and a commission trailer. Hence, we conclude that the phrase "industry standard" was sufficiently defined to survive preliminary objections. While Appellant would have to prove the industry's standard severance package to prevail on this claim during trial, considered as true, his pleading is sufficient to allow recovery.

¶ 21 Next, we must determine whether Appellant's promissory estoppel claims relating to the Compensation Agreement and the Severance Agreement at Counts III and VIII were sufficiently pled. The doctrine of promissory estoppel permits a claimant to enforce a promise in the absence of consideration. *Shoemaker v. Commonwealth Bank,* 700 A.2d 1003 (Pa.Super.1997). To maintain a promissory estoppel action a claimant must aver the following elements: "(1) the promisor made a promise that [it] should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on

---

1. *See Denton v. Silver Stream Nursing and Rehabilitation Center,* 739 A.2d 571 (Pa.Super.1999) (contractually agreed-upon severance payments constitute wages within meaning of WPCL).

the promise; and (3) injustice can be avoided only by enforcing the promise." *Id.* at 1006; *see also Crouse v. Cyclops Industries,* 560 Pa. 394, 403, 745 A.2d 606, 611 (2000) (noting that elements of promissory estoppel claim sound in contract for purpose of determining applicable statute of limitations).[2]

¶ 22 Here, Count III alleges in pertinent part that Appellee promised to fashion a compensation structure to ensure that Appellant would earn in 2001 an amount equal to his compensation for services provided in 2000. Appellant also alleges that he detrimentally relied upon Appellee's promise, agreeing to continue to work under the new compensation structure, which capped his earnings. Finally, Appellant averred that he suffered damages as a result of his reliance on Appellee's promise when Appellee refused to pay the agreed-upon compensation.

¶ 23 Similarly, Count VIII of the amended complaint alleges that Appellee promised to provide Appellant with an industry standard severance package and to purchase his 0.4% ownership interest in the firm, valued at approximately $92,000, if Appellant agreed to forgo an immediate resignation and remain with the firm to provide marketing and business contacts, ease the clients' transition, and host a charitable golf tournament. According to Count VIII, Appellant relied on theses promises to his detriment, electing to remain with the firm for nine additional

months. After Appellant completed his extended term of employment, Appellee allegedly refused to purchase the ownership interest or provide Appellant with a severance package.

¶ 24 We find that these allegations and the inferences reasonably deducible therefrom sufficiently set forth claims for promissory estoppel as to Appellee's alleged promise to pay Appellant a minimum compensation and as to the promise to purchase Appellant's ownership interest in the firm and provide Appellant with an industry standard severance package. Further, sufficient facts were alleged to support the inference that Appellant's reliance on Appellee's promises were reasonable and that injustice would result if the promises were not enforced. Hence, we vacate the portion of the trial court's order sustaining Appellee's demurrer to Counts III and VIII.

¶ 25 We also are constrained to vacate the portions of the trial court's order that sustained Appellee's demurrer to Counts IV, V, IX, and X based on the gist-of-the-action doctrine. Generally, the gist-of-the-action doctrine precludes a party from raising tort claims where the essence of the claim actually lies in a contract that governs the parties' relationship. *See eToll, Inc. v. Elias/Savion Advertising, Inc.,* 811 A.2d 10 (Pa.Super.2002). In *eToll,* this Court applied the gist-of-the-action doctrine to bar a fraud claim that arose from the performance of a contract.

---

**2.** This court previously employed the following alternative elements to determine whether a claimant has proven a promissory estoppel claim:
1) Misleading words, conduct or silence by the party against whom the estoppel is asserted[;] 2) unambiguous proof of reasonable reliance on the misrepresentation by the party seeking to assert the estoppel; and 3) no duty of inquiry on the party seeking to assert estoppel.

*See Thomas v. E.B. Jermyn Lodge No. 2,* 693 A.2d 974, 977 (Pa.Super.1997); *Rinehimer v. Luzerne Cty. Com. College,* 372 Pa.Super. 480, 539 A.2d 1298 (1988). However, since our Supreme Court subsequently recognized the elements enumerated by the *Shoemaker* Court, we will rely upon those elements to determine whether Appellant's claims survive Appellee's demurrer.

Noting that our Supreme Court has never applied the gist-of-the-action doctrine to a fraud claim, the *eToll* Court observed that in the absence of precedent, an intermediate court must resolve the issue as it would predict our Supreme Court would conclude. *Id.* at 16. Hence, relying upon an earlier Superior Court decision in *Bash v. Bell Telephone Co. of Pennsylvania,* 411 Pa.Super. 347, 601 A.2d 825 (1992), the *eToll* Court reasoned that

> [g]enerally, the doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims. *Id.* at 829. As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims. *Id.* The *Bash* Court explained the difference between contract claims and tort claims as follows:
>
>> [a]lthough they derive from a common origin, distinct differences between civil actions for tort and contract breach have developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals.... To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.
>
> *Id.* at 829, *citing, Iron Mountain Sec. Storage Corp. v. American Specialty Foods, Inc.,* 457 F.Supp. 1158, 1165 (E.D.Pa.1978).

*Id.* at 14. Following a thorough analysis of the issue, the *eToll* Court concluded that the gist-of-the-action doctrine would apply to bar a claim for fraud in the performance of a contract. However, it also observed that the gist-of-the-action doctrine would not necessarily bar a fraud claim stemming from the fraudulent inducement to enter into a contract. The court reasoned that if the fraud did not concern the performance of contractual duties, then the gist of the action would be the fraud, rather than any contractual relationship between the parties. *Id.* at 19; *see also Air Products and Chemicals, Inc. v. Eaton Metal Products Co.,* 256 F.Supp.2d 329, 341 (E.D.Pa.2003) (discussing *eToll* and noting distinction between fraud in performance and fraud in inducement claims: "fraud in the inducement claims are much more likely to present cases in which a social policy against the fraud, external to the contractual obligations of the parties, exists.").

¶ 26 Herein, the Compensation Agreement and the Severance Agreement clearly govern the parties' contractual relationship; however, Appellant's allegations do not relate to Appellee's failure to perform its obligations under the contracts. Rather, the tort claims that Appellant raised in his amended complaint relate to Appellee's fraudulent promises that induced Appellant to enter the contracts. Specifically, Appellant alleged that Appellee fraudulently and/or negligently agreed to perform obligations that it never intended to perform in order to induce Appellant to agree to the proposed changes to his compensation package and to forgo an immediate resignation. *See* Amended Complaint, ¶¶ 88–92, at 15 and ¶¶ 147–54, at 25–26. Accordingly, we conclude that since Appellant's tort claims relate to the inducement to contract, they are collateral to the performance of the contracts and therefore, are not barred by the gist-of-the action doctrine. *See eToll, supra* at 17.

¶ 27 Finally, we find that Appellant stated a claim under the Pennsylvania Limited Partnership Act seeking compensation for his 0.4% share of the investment firm valued at approximately $92,000. In

Count XI of the amended complaint, Appellant pled that Appellee granted him a 0.4% interest in the firm, publicly acknowledged Appellant's right to the ownership interest by referring to him as one of the firm's thirty-four owners, and calculated the value of the 0.4% interest as of the date Appellant found alternate employment. Appellant also alleges that Appellee failed to pay Appellant the fair market value of his ownership interest, upon reasonable demand, pursuant to section 8554 of the Limited Partnership Act.[3]

¶ 28 The trial court sustained the preliminary objection on the belief that Appellant had to aver that this issue was not addressed in a partnership agreement. We disagree. Pursuant to the section of the Act upon which Appellant's claim is based, a partnership agreement, rather than the Act, controls the rights and duties of partners that are addressed in the agreement. Thus, the existence of a partnership agreement addressing Appellant's situation may provide Appellee with a defense to Appellant's claim. However, since a partnership agreement is not an element of this claim, Appellant was not required to state whether a partnership agreement existed in order to plead sufficient facts to survive a demurrer of his claim.[4]

¶ 29 Further, we note that at this early stage of litigation, the trial court was obliged to draw all reasonable inferences in favor of the complainant. *Insurance Adjustment Bureau, Inc., supra.* Hence, we conclude that Appellant's silence relating to the partnership agreement should not have elicited an adverse inference against him, and it was not grounds to sustain Appellee's demurrer.

¶ 30 In light of the facts alleged in Appellant's amended complaint and our plenary review, we conclude that Appellant's eleven-count amended complaint was adequate to survive Appellee's preliminary objections. Accordingly, we vacate the trial court's order dismissing the amended complaint with prejudice.

¶ 31 Order vacated. Matter remanded. Jurisdiction relinquished.

---

**3.** 15 Pa.C.S. § 8554 provides as follows:
Distribution upon withdrawal
Except as provided in this subchapter, upon withdrawal, any withdrawing partner is entitled to receive any distribution to which he is entitled under the partnership agreement and, except as otherwise provided in the partnership agreement, he is entitled to receive, within a reasonable time after withdrawal, the fair value of his interest in the limited partnership as of the date of withdrawal based upon his right to share in distributions from the limited partnership.

**4.** On appeal, Appellee argues that pursuant to Pa.R.C.P 1019(i), Appellant was required to attach a copy of the partnership agreement to his amended complaint, and Appellant's failure to comply with Rule 1019(i) was grounds for dismissal. However, since Appellee merely demurred to the amended complaint, rather than invoking Appellant's failure to conform to Rule 1019(i) as a specific ground for a preliminary objection under Rule 1028(a)(2), the court never addressed this objection. *See* Pa.R.C.P. 1028(b) ("All preliminary objections shall be raised at one time. They shall state specifically the grounds relied upon and may be inconsistent.").