J-A12012-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SVNE PHARMA, INC., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| NORTHEAST PHILADELPHIA PHARMACY, INC. AND INNA SANDLER F/K/A INNA ZAYDENBERG, | |
| Appellees | No. 1561 EDA 2015 |

Appeal from the Order Entered April 24, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): August Term, 2013 No. 02706

| | |
|---|---|
| SVNE PHARMA, INC., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| NORTHEAST PHILADELPHIA PHARMACY, INC. AND INNA SANDLER F/K/A INNA ZAYDENBERG, | |
| Appellees | No. 2335 EDA 2015 |

Appeal from the Order Entered July 2, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): August Term, 2013 No. 02706

BEFORE: BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED AUGUST 30, 2016**

_____

[*] Former Justice specially assigned to the Superior Court.

SVNE Pharma, Inc. (SVNE or Appellant) appeals from the orders entered April 24, 2015, and July 2, 2015, in which the trial court denied its motion for partial summary judgment, granted the motion for summary judgment filed by Northeast Philadelphia Pharmacy, Inc. and Inna Sandler (collectively, NEPP or Appellees), dismissed SVNE's complaint, and thereafter awarded fees and costs to NEPP.[1]  We affirm.

We adopt the following statement, setting forth the factual background to this case:

> This action arises from [SVNE's] purchase of a pharmacy from [NEPP]. SVNE, owned by Purnachandra Roa Akkineni and Ramaswamy Ram Gummadi, operates pharmacies in the greater Philadelphia area.  … Sandler is the former president and sole owner of NEPP, a pharmacy which filled prescription medications and sold over-the-counter drugs and other front-of-house merchandise.  NEPP issued coupons to its customers.  The coupons were issued in several forms through the course of NEPP's ownership history and were redeemed by NEPP's customers at designated local establishments.  The cashiers at each of the local establishments knew the coupon's value was $1.00.  After collecting the coupons from customers, local merchants would then present the coupons to NEPP for their redemption.
>
> In January or February 2011, Howard Brooker, a representative of SVNE met with Sandler, to discuss the sale of NEPP to SVNE. Brooker visited the pharmacy on at least three occasions, once during regular business hours.  On each occasion, Brooker was given a tour of the pharmacy as well as explanations as to how the business was conducted.  A disputed question of fact exists as to whether Sandler discussed the Coupon Program with Brooker prior to the sale of the Pharmacy and/or whether

---

[1] In August 2015, these appeals were consolidated by stipulation.  **See** Pa.R.A.P. 513.

Sandler disclosed the Coupon Program prior to the sale of Pharmacy to SVNE.

On September 1, 2011, NEPP and SVNE executed an Asset Purchase Agreement in which NEPP transferred its assets to SVNE for $2,000,000. This sale price was based on the stated revenues of the Pharmacy. Included in the Asset Purchase Agreement were warrants and representations issued by NEPP to SVNE. Particularly, [Section] 3.14 of the Asset Purchase Agreement, "Compliance with Law", provided as follows:

> Seller[s] [*i.e.*, NEPP] complied in all material respects with all state and federal laws pertaining to the Business and operation of the pharmacy. Sellers have complied with all third provider contracts and agreements. Sellers have complied in all material aspects with all existing laws, rules, regulations, ordinances, orders, judgments and decrees now or hereafter applicable to the Assets, or the sale or transfer of the Assets, including without limitation the transfer of controlled substances.

Additionally, the Asset Purchase Agreement confirmed that the representations and warranties made by NEPP were true and not misleading in any material respect[.] …

On September 16, 2011, SVNE took over the operations of the pharmacy with Brooker serving as pharmacist and manager. On September 19, 2011, Brooker began maintaining a Coupon Log to keep track of the reimbursement checks issued to the local businesses for the redeemed coupons. The Coupon Log contained forty entries from September 19, 2011 through and including February 2, 2012. At some point, SVNE began to question the legality of the Coupon Program. SVNE never received a legal opinion regarding the legality of the Coupon Program. SVNE did discuss its concerns about the Coupon Program with Sandler who informed SVNE that terminating the program would be disastrous. Additionally, SVNE alleged to have discovered during its operations that NEPP routinely waived customer co-pays for their prescriptions and issued a dollar coupon for each prescription filled by said customers. SVNE stopped reimbursing the local merchants for the redemption of NEPP coupons by March 5, 2012.

[Appellee] Sandler offered to purchase the pharmacy [back] from SVNE on two occasions, offering $700,000 and $500,000 respectively. SVNE refused. As a result of the cessation of the programs, SVNE alleged the average weekly prescriptions decreased from more than 3,500 per week prior to February 18, 2012 to less than 1,500 per week after March 17, 2012. SVNE also alleged that the $10 million in gross revenue upon which the $2 million purchase price was based dwindled to $4.25 million in 2012 as the number of prescriptions declined from 123,185 per year to 38,737 per year.

Trial Court Opinion (S. J. Opinion), 07/28/2015, at 1-3 (internal citations to the record omitted; some punctuation modified).

In addition to the above facts, Section 3.19 of the purchase agreement provided as follows:

Seller shall not, by Seller's acts or omissions, permit or suffer any action to be taken which would cause any of the foregoing representations and warranties to be untrue or misleading in any material respect as of Closing. No representation or warranty of Seller contained in this Agreement or statement in the Schedules or Exhibits hereto contains any materially untrue statement. No representation or warranty of Seller contained in this Agreement or statement in the Schedules or Exhibits hereto omits to state a material fact necessary in order to make the statements herein or therein, in light of the circumstances under which they were made, not materially misleading.

Complaint, Exhibit A, "Asset Purchase Agreement," § 3.19.

SVNE commenced this action in August 2013, asserting claims for fraud, equitable fraud/rescission, and breach of contract. In support of each claim, SVNE alleged that NEPP (1) had engaged in an illegal coupon scheme and other irregular billing practices; (2) had concealed these practices from SVNE; and (3) that said practices had artificially inflated the reported profits of the pharmacy. *See* Complaint at ¶¶ 43-45, 50-52, and 57-59. According

to SVNE, NEPP's concealment of its coupon scheme and billing practices fraudulently induced SVNE to purchase the pharmacy and, further, as these practices were illegal, violated NEPP's warranty that its operation of the pharmacy had complied with state and federal law. *Id.* at ¶¶ 46, 53, and 58. To the extent SVNE prevailed on its contract claim, SVNE further sought attorneys' fees and costs as provided in the contract. *Id.* at ¶ 60 (citing Section 8.08 of the Asset Purchase agreement).

In December 2014, the parties filed competing motions for summary judgment. SVNE filed a motion for partial summary judgment as to its claim for breach of contract, asserting that NEPP's illegal coupon program and routine waiver of customer copayments constituted material breaches of Sections 3.14 and 3.19 of the Asset Purchase Agreement. *See* SVNE's Motion for Partial Summary Judgment, 12/02/2014, at ¶¶ 79-82. NEPP filed a motion for summary judgment as to all counts against it, asserting that (1) SVNE's fraud claim was barred by the parol evidence rule, as well as the gist of the action doctrine, (2) SVNE's equitable rescission claim was waived for failure to act promptly, and (3) SVNE's contract claim was barred by the doctrine of election of remedies,[2] and the claim further failed as a matter of

_____

[2] The doctrine of the election of remedies estops a party from claiming two or more inconsistent remedial rights. *See, e.g.*, *Umbelina v. Adams*, 34 A.3d 151, 161-62 (Pa. Super. 2011).

law for lack of causation. ***See*** NEPP's Motion for Summary Judgment, 12/02/2014, at ¶¶ 61-62, 72, 93-94, 104-06, and 124.

Following timely responses and oral argument, the trial court denied SVNE's motion for partial summary judgment, granted NEPP's motion for summary judgment, and dismissed SVNE's complaint. ***See*** Trial Court Order, 04/24/2015. SVNE timely appealed this order. The trial court did not direct SVNE to file a Pa.R.A.P. 1925(b) statement. Nevertheless, the court issued an opinion explaining its decision. **See** S. J. Opinion.[3]

According to the trial court, SVNE's fraud claim was barred by the gist of the action doctrine. Noting that SVNE's claim was based upon its assertion that NEPP had failed to disclose an allegedly illegal coupon program and, further, that the parties' Asset Purchase Agreement included warranties against such unlawful actions, the court concluded that "the gist of the action was contract, not fraud." S. J. Opinion at 5. Regarding SVNE's claim for rescission, the court concluded that there was no evidence that SVNE had acted promptly in seeking the remedy, and therefore, SVNE had waived any claim for equitable rescission. ***Id.*** at 6-7. Finally, the trial court addressed the inadequacy of SVNE's claim for breach of contract, reasoning that any damages incurred by SVNE were the result of its own business

_____

[3] The trial court issued a preliminary opinion with its order dated 04/24/2015. **See** Trial Court Opinion (Preliminary Opinion), 04/24/2015.

decision to terminate the coupon program and not NEPP's allegedly illegal operation of the pharmacy, or its concealment thereof. *Id.* at 7-8. Accordingly, the trial court concluded there was no causal connection between the alleged breach and SVNE's damages. *Id.* In this context, the court also noted that SVNE's derivative claim for attorneys' fees, based upon the alleged breach of contract, was moot. *See id.* at 8 n.15.

Prior to SVNE's notice of appeal, NEPP filed a motion for counsel fees. Following SVNE's response and oral argument, the trial court granted the motion in part, awarding NEPP fees in the amount of $104,783.95 and costs in the amount of $24,213.06. *See* Trial Court Order, 07/02/2015. Judgment was entered on the award, and SVNE timely appealed.[4] Thereafter, SVNE filed a court-ordered Pa.R.A.P. 1925(b) statement, and the trial court issued a responsive opinion. *See* Trial Court Opinion (Fees Opinion), 10/01/2015.

SVNE raises several issues, paraphrased as follows:

1. Whether the trial court erred in concluding that there was no evidence that NEPP conducted an illegal coupon program, which, as a matter of law, would constitute a breach of the parties' Asset Purchase Agreement, specifically Sections 3.14 and 3.19;

2. Whether the trial court erred in dismissing SVNE's fraud in the inducement claim, premised upon NEPP's concealment of its coupon program, where SVNE's claim for fraud was not barred by the gist of the action doctrine; and

---

[4] The entry of judgment was unnecessary. *See Miller Elec. Co. v. DeWeese*, 907 A.2d 1051, 1056-57 (Pa. 2006).

3. Whether the trial court erred in awarding NEPP counsel fees pursuant to the parties' Asset Purchase Agreement, where (a) the agreement was voidable, as it was induced by fraud, and (b) NEPP was estopped from recovering fees based upon the fee-shifting provision of the agreement.

***See*** Appellant's Brief at 5-7.[5]

The first two issues raised by SVNE challenge the trial court's decision to grant NEPP summary judgment and dismiss SVNE's claims for fraud and breach of contract.[6]

Our scope of review of an order granting summary judgment is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. Thus, a record that supports summary judgment will either (1) show

_____

[5] SVNE's statement of the questions involved comprises three pages. It is needlessly long. Moreover, SVNE has failed to comply with Pennsylvania Rule of Appellate Procedure 2119, in that its argument is not divided into as many parts as there are questions presented. In a brief that comprises more than fifty pages, this failure has complicated our review of Appellant's arguments. ***See In re R.D.***, 44 A.3d 657, 674 (Pa. Super. 2012) ("[W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived."); Pa.R.A.P. 2119.

[6] SVNE does not challenge the court's decision regarding its claim for equitable rescission.

the material facts are undisputed or (2) contain insufficient evidence of facts to make out a prima facie cause of action or defense and, therefore, there is no issue to be submitted to the fact-finder. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate court may disturb the trial court's order only upon an error of law or an abuse of discretion.

**DeArmitt v. N.Y. Life Ins. Co.**, 73 A.3d 578, 585-586 (Pa. Super. 2013) (internal citations and quotation marks omitted; some punctuation modified).

In its first issue, SVNE contends the trial court erred in dismissing its contract claim. According to SVNE, NEPP's coupon program and its routine waiver of customer co-payments violated several state and federal laws.[7] These alleged violations, according to SVNE, constituted a material breach of the parties' Asset Purchase Agreement. **See, e.g.**, SVNE's Appellate Brief at 28 (citing Section 3.14 of the agreement, which warranted that NEPP complied with all state and federal laws regarding the operation of the pharmacy). Thus, SVNE concludes, it was entitled to summary judgment on its contract claim, or alternatively, it should have been permitted to proceed to trial on the merits. **Id.** at 30.

---

[7] According to SVNE, the coupon program and the routine waiver of customer co-payments were illegal, as they violated the federal Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b(b), the Civil Monetary Penalties Law (CMPL), 42 U.S.C. § 1320a-7a, the Pennsylvania AKS, 62 P.S. § 1407, and the federal False Claims Act (FCA), 42 U.S.C. § 1320a-7b(g).

The central premise of SVNE's argument is that the trial court was required to evaluate the legality of NEPP's operation of the pharmacy, and the court's failure to do so constitutes reversible error. **See** Appellant's Brief at 30. We reject this premise. To our knowledge, there exists no private cause of action for an alleged violation of the state and federal anti-kickback statutes cited by SVNE. **See** *supra* at n.5; **see also, e.g.**, 42 U.S.C. § 1320a-7 (indicating that the Secretary of Health and Human Services is empowered to pursue such claims). Similarly, no private cause of action exists for either the Civil Monetary Penalties Law or the federal False Claims Act. **Id.** Indeed, SVNE alleges no such claims in its complaint. Absent independent government action, *e.g.*, a criminal indictment or complaint filed, an advisory opinion issued, or a civil or criminal judgment entered against NEPP, the record is devoid of evidence establishing that NEPP's operation of the pharmacy violated any state or federal law.

Moreover, SVNE fails to explain how or why the trial court was required to determine the legality of NEPP's operation of the pharmacy. It cites no authority supporting this premise. Accordingly, we deem SVNE's argument waived for lack of proper development. **See McEwing v. Lititz Mut. Ins. Co.**, 77 A.3d 639, 647 (Pa. Super. 2013) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion

capable of review, that claim is waived.") (quoting **Umbelina**, 34 A.3d at 161).

Absent this waiver, we discern no error in the trial court's analysis. To state a claim for breach of contract, a plaintiff must establish "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." **Corestates Bank, N.A. v. Cutillo**, 723 A.2d 1053, 1058 (Pa. Super. 1999). Moreover, it is well settled that "[i]n order to recover damages pursuant to a breach of contract, the plaintiff must show a causal connection between the breach and the loss." **Logan v. Mirror Printing Co. of Altoona, Pa.**, 600 A.2d 225, 226 (Pa. Super. 1991).

Here, SVNE alleged that NEPP breached Section 3.14 of the Asset Purchase Agreement by failing to operate the pharmacy in accordance with state and federal law. However, there is no evidence of record establishing a connection between this alleged breach and any damages incurred by SVNE. To the contrary, as determined by the trial court, "[t]he undisputed facts of record demonstrate the cause for SVNE's losses was SVNE's business decision to voluntarily terminate the Coupon Program and change billing procedures." S. J. Opinion at 7-8. Accordingly, as a matter of law, SVNE cannot establish its claim for breach of contract. **See Logan**, 600 A.2d 226.

In its second issue, SVNE contends the trial court erred in dismissing SVNE's claim for fraud, as it misapplied the gist of the action doctrine. *See* Appellant's Brief at 39. The gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims." *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002). In application, the doctrine precludes a plaintiff "from re-casting ordinary breach of contract claims into tort claims." *Id.*

Recently, the Pennsylvania Supreme Court expressly adopted the doctrine and described it in the following manner:

> The general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, *e.g.*, for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract — *i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract — then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68-69 (Pa. 2014) (internal citations omitted).

According to SVNE, NEPP fraudulently induced the purchase of its pharmacy by concealing its allegedly illegal coupon program and other billing practices from SVNE. SVNE asserts that NEPP's concealment was material to its decision to enter into the Asset Purchase Agreement but unrelated to any contractual obligation.[8] **See** Appellant's Brief at 41.

SVNE's argument is without merit. As noted above, SVNE premised both its contract claim and fraud claim on the same operative facts. Thus, from the outset, SVNE's complaint blurs the conceptual distinction between contract and tort that the gist of the action doctrine works to maintain. **See eToll**, 811 A.2d at 14. Moreover, the terms of the parties' Asset Purchase Agreement are clear. The agreement required NEPP to warrant that its operation of the pharmacy complied with state and federal law. Asset Purchase Agreement at § 3.19. Further, NEPP expressly agreed that it had not concealed any material fact that would render its representations and warranties misleading. **Id.** at § 3.19. As these duties were defined by contract and did not arise from or reflect a broader social duty owed to all individuals, SVNE's claim clearly sounds in contract, not tort. **See Bruno**,

---

[8] Although NEPP disputes whether it concealed the coupon program, based upon our standard of review, we construe the record against NEPP in this regard. Thus, we credit SVNE's evidence of concealment. There is no dispute, however, that the coupon program contributed to the success of the pharmacy. According to SVNE, pharmacy profits were artificially inflated by the program, and it was these profits that induced SVNE's purchase.

106 A.3d at 68-69. Accordingly, we discern no error in the trial court's application of the gist of the action doctrine.[9]

In its final issue, SVNE contends the trial court erred when it awarded counsel fees to NEPP. Notably, SVNE has abandoned its prior challenge to the reasonableness of the fees awarded, focusing rather on the court's decision whether to award fees at all. **Compare** Appellant's Pa.R.A.P. 1925(b) Statement, 09/04/2015, **with** Appellant's Brief at 7, 50-53. SVNE raises two arguments in this regard.

First, SVNE asserts that the trial court should not have interpreted the Asset Purchase Agreement, because SVNE's primary claim asserted fraud, not breach of contract, and because its fraud claim rendered the agreement void. **See** Appellant's Brief at 50-52. However, SVNE did not preserve this argument in its Pa.R.A.P. 1925(b) statement. Accordingly, we deem it waived. **See In re Estate of Daubert**, 757 A.2d 962, 963 (Pa. Super. 2000); Pa.R.A.P. 1925(b)(4)(vii).

---

[9] SVNE suggests that the nature of its claim – fraud in the inducement – presents an exception to the usual application of the doctrine. Appellant's Brief at 42 (citing in support **Sullivan v. Chartwell Inv. Partners**, 873 A.2d 710, 719 (Pa. Super. 2005) (observing that the doctrine "would not *necessarily* bar a fraud claim stemming from the fraudulent inducement to enter into a contract") (emphasis added)). In light of the clear contractual obligations defined in the Asset Purchase Agreement, we need not address whether, in another context, such an exception may apply.

Second, SVNE asserts that NEPP was estopped from recovering fees based on the terms of the Asset Purchase Agreement, because NEPP had previously argued a contrary position in the context of the parties' motions for summary judgment, *i.e.*, that the agreement did not apply. *Id.* at 52-53. The trial court rejected this argument, and we agree with the trial court. *See* Fees Opinion at 4-5.

"Pursuant to the doctrine of judicial estoppel, 'a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained.'" ***Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Family Mkt., Inc.***, 98 A.3d 645, 656 (Pa. Super. 2014) (***Newman***) (quoting ***In re Adoption of S.A.J.***, 838 A.2d 616, 620 (Pa. 2003)). Here, upon granting NEPP summary judgment and dismissing SVNE's claim for breach of contract, the trial court noted that "[t]he question of attorney fees and punitive damages [is] moot." Preliminary Opinion, at 8 n.17; ***see also*** S. J. Opinion at 8 n.15. Thus, the trial court never addressed the issue of counsel fees in the context of the motions for summary judgment; it never considered any prior arguments asserted by NEPP, nor did it issue a ruling on the issue favorable to NEPP. Accordingly, the doctrine of judicial estoppel does not apply. ***Newman***, 98 A.3d at 656.

Absent SVNE's waiver, and further notwithstanding its erroneous reliance upon the doctrine of judicial estoppel, we briefly address the trial

court's decision to award counsel fees to NEPP. Generally, litigants must pay their own fees and costs.

> Under the American Rule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception.

*Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 482-83 (Pa. 2009).

Here, the trial court based its decision to award fees on the parties' Asset Purchase Agreement, which provides in relevant part:

> If any action at law or in equity is brought by either party hereto to enforce or interpret the terms of this Lease, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs, and disbursements in addition to any other relief to which such party may be entitled.

Asset Purchase Agreement, § 8.08; *see also Trizechahn*, 976 A.2d at 483 (noting that the interpretation of a contract is a question of law).[10] The court concluded that NEPP was the prevailing party and that, therefore, NEPP was entitled to recover reasonable fees and costs. We discern no error.

Orders affirmed.

---

[10] SVNE acknowledges that this provision "inartfully referred to … a 'Lease.'" Appellant's Brief at 51. No lease is relevant to this dispute.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/30/2016