J-A21030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ASTON TOWNSHIP FIRE DEPARTMENT | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1171 EDA 2022 |
| ARETE HEALTHCARE SERVICES, LLC | : | |

Appeal from the Order Entered March 29, 2022
In the Court of Common Pleas of Delaware County
Civil Division at CV-2020-000901

BEFORE: LAZARUS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.: **FILED SEPTEMBER 30, 2022**

Aston Township Fire Department (Appellant) appeals from the order granting summary judgment in favor of Arete Healthcare Services, LLC (Arete), in this breach of contract and negligence action. After careful review, we affirm.

The trial court summarized the underlying facts as follows:

This action arises from a business relationship between a volunteer fire department that relies on revenues from billing Medicare patients, and a services provider that assists healthcare providers with patient billing services. In this case, [Appellant] entered into a contract with Arete pursuant to which Arete agreed to handle billing matters on behalf of [Appellant].

To understand the dispute that gives rise to this action, the following undisputed facts are helpful. In order to be eligible to receive revenue from Medicare, an entity such as [Appellant] must be validated by the Center for Medicare/Medicaid Services ("CMS") in order to legally bill Medicare and Medicaid patients. [Appellant's] billing privileges were so validated on February 28,

2013, and were set to expire on February 28, 2018, unless revalidated. Although not contractually obligated to do so … Arete submitted a revalidation application to CMS on [Appellant's] behalf on February 7, 2018. This revalidation application listed 793 Mount Road, Aston Township, as the location of [Appellant]. However, [Appellant, without notice to Arete,] had moved to a new fire station at 2900 Dutton Mill Road, Aston Township, a few months prior to July 2017, when they sold the 793 Mount Road property. CMS revoked [Appellant's] billing privileges after a site inspection of [Appellant's] registered location — 793 Mount Road — revealed that the location was empty.

In this case, [Appellant] has asserted claims against Arete for breach of contract and negligence, alleging that Arete failed to carry out a duty to properly submit the revalidation application to CMS. [Appellant] asserts that it suffered damages—a "loss of income from being unable to bill Medicare and Medicaid[] patients" … as a result of Arete's conduct, under a breach of contract and negligence theory, and asks [the trial court] to award damages, including punitive damages. As pled, the breach of contract claim derives from an agreement [Agreement] between the parties dated October 26, 2012[.] The Complaint asserts the negligence count in the alternative, averring that "[i]n the alternative and to the extent the parties' contract did not require Arete to properly apply for the Medicare revalidation, then Arete voluntarily undertook to do so." Arete, in both its Answer and in the present Motion, denies having assumed such a duty, under either theory of liability.

By the Motion [for Summary Judgment], Arete requests that the [trial court] dismiss the claims against it, arguing that [Appellant's] claims as to breach of contract, negligence, and punitive damages are legally and factually insufficient. Specifically, [Arete] asserts that [Appellant] has failed to establish either that (1) Arete breached its contract or any duty[;] and/or (2) such breach caused damages to [Appellant]. As such, Arete argues that [Appellant's] failure to adduce proof on these two elements of [Appellant's] claims precludes relief and requires entry of judgment in Arete's favor at this juncture.

Trial Court Opinion, 3/29/22, at 1-3 (record citations omitted).

On March 23, 2022, the trial court granted Arete's motion for summary judgment.[1] On March 25, 2022, Appellant filed a petition for reconsideration, which the trial court denied on April 29, 2022. Appellant filed a timely notice of appeal. The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) statement and did not author an additional opinion.

Appellant presents two questions for review:

1. Was summary judgment in favor of [Arete] appropriate when [Arete's] conduct was the direct cause of [Appellant's] loss[?]

2. Was summary judgment in favor of [Arete] appropriate when there is a genuine issue of fact as to [Arete's] duty to [Appellant] and [Arete's] responsibility in causing [Appellant's] harm[?]

Appellant's Brief at 2.

When considering an order disposing of a motion for summary judgment,

[o]ur scope of review ... is plenary. [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [its] cause of action. Summary judgment is proper "if, after the completion of discovery relevant to the motion, including the production of expert reports,

---

[1] For reasons not apparent from the record, the prothonotary did not file and serve the order until March 29, 2022.

an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2. Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate [c]ourt may disturb the trial court's order only upon an error of law or an abuse of discretion.

***Nat'l Cas. Co. v. Kinney***, 90 A.3d 747, 752-53 (Pa. Super. 2014) (some citations, quotation marks, and brackets omitted).

Initially, we note the deficiencies in Appellant's brief. Pennsylvania Rule of Appellate Procedure 2119 requires the argument be "divided into as many parts as there are questions to be argued." Pa.R.A.P. 2119(a). While Appellant raises two issues in the statement of the questions involved, Appellant argues three issues in the argument. Appellant's Brief at 2, 10-14. Moreover, Appellant's argument lacks citation to **pertinent** legal authority. We have explained:

The Rules of Appellate Procedure state unequivocally that **each question an appellant raises is to be supported by discussion and analysis of <u>pertinent authority</u>**. Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention. This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, we observe that the Commonwealth Court, our sister appellate court, has aptly noted that mere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter.

*Coulter v. Ramsden*, 94 A.3d 1080, 1088-89 (Pa. Super. 2014) (emphasis added). While we could find waiver as to Appellant's first two issues, we endeavor, to the extent possible, to address them.

In its first issue, Appellant maintains that contrary to the trial court's finding, Appellant's failure to notify CMS of "its new address … as required by 42 C.F.R. § [424.]516(d)(1)(ii[i]), was not the cause of the revocation of billing privileges." Appellant's Brief at 10; *see also id.* at 10-12. Appellant's allegation is belied by the record, as the Administrative Law Judge (ALJ) specifically stated that regulations required Appellant to "report to CMS changes in information provided on their enrollment applications. 42 C.F.R. §§ 425.515, **424.516**." ALJ Opinion, 8/26/19, at 3 (emphasis added). The ALJ also observed that prior to Arete's submission of the revalidation application, CMS sent notification to Appellant at the 793 Mount Road address, but the U.S. Postal Service returned it as unable to forward. *Id.* at 4. The ALJ rejected Appellant's attempts to blame the CMS site inspector and Arete for failing to "attempt[] to locate [Appellant's] new practice location[.]" *Id.* at 6. The ALJ concluded,

> the site inspector's role was to inspect the practice location that [Appellant] had on file with CMS and not to investigate where [Appellant's] practice location might be after determining that [Appellant] was not operational at its practice location on file.
>
> * * *
>
> [Appellant] has made it clear that it relied on [Arete] to handle its Medicare enrollment. However, [Appellant] needed to provide some oversight to [Arete]. **Ultimately, [Appellant] is**

- 5 -

**responsible for properly keeping CMS updated as to its practice location, something [Appellant] did not do.**

*Id.* (emphasis added).

Thus, the record supports the trial court's finding that the predominant reason for the suspension was Appellant's failure to notify CMS of its change of address. Appellant's first issue does not merit relief.

Appellant next argues "Arete's actions are grounds for breach of contract." Appellant's Brief at 12; *see also id.* at 12-13. Appellant does not point to any term of the Agreement breached by Arete. Instead, Appellant states:

> The [Agreement] provided 'Arete offers temporary clerical and administrative services.' Providing revalidation services certainly is an administrative service. Therefore, Arete had an express contractual duty to [Appellant] to properly fill out the revalidation application.

*Id.* at 12. In the alternative, Appellant argues a contractual duty exists under the doctrine of detrimental reliance. *Id.*

The three elements needed to establish breach of contract are the existence of a contract, a breach of duty imposed by the contract, and damages. *See Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. 2005). Here, the trial court opined:

> [T]he [Agreement] attached to the Complaint, and upon which the breach of contract claim is expressly based … does not impose on Arete any obligation related to the revalidation application to CMS. Indeed, neither "CMS" nor the term "revalidation application" appears in the [A]greement, which sets forth the services to be provided by Arete in terms of billing and collection services, office bookkeeping and payroll services, and consulting and support

services. There is no evidence in the summary judgment record that the [A]greement was revised (in accordance with the terms of the [Agreement]) to include services related to a revalidation application. The express language of the [Agreement] … contradicts and dispels the suggestion that Arete's "general duties under the contract between the parties" included an undertaking by Arete "to correctly and properly submit the revalidation application to CMS." As such, the [trial c]ourt finds there is no reasonable inference from the evidence in the summary judgment record to conclude that Arete had a contract-based duty to submit the revalidation application. The [trial c]ourt acknowledges [Appellant's] argument based on "detrimental reliance", but finds that any reliance by [Appellant] in the face of the express language of the [A]greement is unreliable and cannot support the claim for relief in this case under a contract theory.

Trial Court Opinion, 3/29/22, at 5-6 (record citations omitted).

We agree. We first note that Appellant takes the quote from the Agreement about "administrative services" out of context. The Agreement provided that certain services, labeled "Consulting and Support Services," were available for an extra fee to "be negotiated." Agreement, 10/26/12, at 1 (unnumbered). Among these services were "temporary clerical and administrative assistance services." *Id.* The term "administrative assistance services" was not defined, and the Agreement provided that "[a]ny revisions to this Agreement must be mutually agreed to (in writing) by the Parties[.]" *Id.* at 3 (unnumbered). Appellant has not identified any written amendment by the parties for any type of administrative services, including the revalidation application. Thus, Appellant has not demonstrated that Arete had a contractual duty under the Agreement to submit a revalidation application to CMS.

Appellant's claim of detrimental reliance is equally unavailing.

> A cause of action under detrimental reliance or promissory estoppel arises when a party relies to his detriment on the intentional or negligent representations of another party, so that in order to prevent the relying party from being harmed, the inducing party is estopped from showing that the facts are not as the relying party understood them to be.

*Rinehimer v. Luzerne Cty. Cmty. Coll.*, 539 A.2d 1298, 1306 (Pa. Super. 1988). Appellant does not identify any representations by Arete that Appellant relied upon to its detriment. Appellant's second issue does not merit relief.

In its third issue, Appellant contends Arete "still [had] a responsibility to [Appellant] because it voluntarily assumed this responsibility and did so either negligently, or with reckless indifference." Appellant's Brief at 13; *see also id.* at 13-14.

> Generally, to state a cause of action for negligence, a plaintiff must allege facts which establish the breach of a legally recognized duty or obligation of the defendant that is causally connected to actual damages suffered by the plaintiff. … The existence of a duty is a question of law. … A person may, through his affirmative conduct, assume a duty to exercise reasonable care in the performance of the conduct.

*Baumbach v. Lafayette College*, 272 A.3d 83, 89 (Pa. Super. 2022) (citations and quotation marks omitted).

Here, the trial court determined,

> there is insufficient—if any—evidence that Arete had a duty to [Appellant] and that the damages sustained by [Appellant] were caused by Arete's conduct. According to [Appellant], it is Arete's contractual duty that is the basis of [Appellant's] count for negligence. But as discussed above, nothing in the [Agreement] between the parties supports the conclusion that Arete had a duty beyond what is described in their [A]greement. A duty must have

- 8 -

a legal basis and arise from factual support in connection with such basis. For example, the law imposes legal duties on landowners vis-a-vis persons who enter on an owner's land under certain and various circumstances. Nothing in the summary judgment record, or in any case law offered by the parties or discovered by the undersigned, supports the conclusion that there was a duty on the part of Arete vis-a-vis [Appellant,] beyond the duties that Arete assumed pursuant to the [Agreement].

In addition, in this case, [Appellant's] alleged injury/damages is the loss of income stemming from being unable to bill Medicare and Medicaid patients for ambulance services due to its billing privileges being revoked. Because [Appellant's] billing privileges were revoked because of [Appellant's] failure to properly report their change in practice location, not because of any failure on the part of [Arete], the [trial c]ourt finds that these damages were caused by [Appellant's] own conduct, and this precludes an ability to attribute causation to [Arete], since the billing privileges would have been revoked regardless of [Arete's] actions. It was [Appellant's] failure to report their change in practice location that caused the injury in this case, and there is nothing in the record to support a shifting of the responsibility to [Arete].[2] … [I]n the instant case, the damages [Appellant] sustained would not have been incurred but for its own failure to report its change in practice location. At best, even if actionable — and the [trial c]ourt has concluded it is not, [] — [Arete's] alleged failure to properly submit the revalidation application would have been merely a remote cause of [Appellant's] injuries, not a substantial cause.

Trial Court Opinion, 3/29/22, at 7-8 (record citations omitted, footnote added).

---

[2] Appellant does not dispute Arete's contention that Appellant failed to notify Arete of the address change. Arete's Brief at 6. **See also** Deposition of Linda Pearce-Clark, EMS Director for Arete, 3/22/21, at 13, 26, 34 (discussing difficulties in getting Appellant to respond to requests, stating Appellant "do[es] not follow up with me when things change," and testifying that Appellant did not inform her it merged with another fire company and moved until after Arete submitted the revalidation).

In sum, and upon careful consideration, we agree with the trial court's disposition. As the trial court did not abuse its discretion in granting Arete's motion for summary judgment, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2022